[Cite as *State v. Moore*, 2021-Ohio-287.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2020 CA 0038 |
| DANIEL MOORE | |
| | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No. 2019 CR 0516

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      January 29, 2021

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

GARY BISHOP      WILLIAM T. CRAMER
PROSECUTING ATTORNEY      470 Olde Worthington Road
JOSEPH C. SNYDER      Suite 200
ASSISTANT PROSECUTOR      Westerville, Ohio 43082
38 South Park Street
Mansfield, Ohio 44902

*Wise, John, J.*

{¶1}   Appellant Daniel Moore ("Appellant") appeals his conviction in the Richland County Court of Common Pleas for two counts of rape, in violation of R.C. 2907.02(A)(1)(c), and two counts of rape, in violation of R.C. 2907.02(A)(2). Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

**STATEMENT OF THE FACTS AND CASE**

{¶2}   On July 29, 2019, Appellant was indicted on Counts 1 and 3, Rape (when the other person's ability to resist or consent is substantially impaired because of a mental condition and the offender knows, or has reasonable cause to believe, that the other person's ability to resist or consent is substantially impaired because of a mental condition), in violation of R.C. 2907.02(A)(1)(c), both felonies of the first degree. In addition, Appellant was indicted on Counts 2 and 4, Rape (when a defendant engages in sexual conduct with another and purposely compels another person to submit by force or threat of force), in violation of RC. 2907.02(A)(2), both felonies of the first degree. These charges stemmed from the sexual conduct engaged in by Appellant with a mentally impaired sixteen-year-old female who is his niece, E.M.

{¶3}   On March 3, 2020, the matter proceeded to a jury trial.

{¶4}   At trial, M.H., mother of E.M. testified that on April 5, 2019, she dropped E.M. off at F.M.'s house for the weekend. F.M. is the aunt of E.M. M.H. received a call that her daughter had been raped by Appellant. After speaking with E.M., M.H. went to F.M.'s house. M.H. discovered E.M. was not at F.M.'s house but at Appellant's house. M.H. then testified she and F.M. were on the phone with Appellant yelling at him, asking why he raped E.M. She stated Appellant denied raping E.M. When E.M. came back to

F.M.'s house, M.H. observed that E.M. was scared, upset, sad, and crying. E.M.'s clothing was askew and her pants were sagging, which was unusual for E.M.

{¶5} M.H. further testified when E.M. was three months old, she had double bronchial pneumonia, which delayed her mental development. E.M. has undertook occupational therapy to refine her motor skills, physical therapy when she was young to help her walk, and is currently in speech therapy. M.H. discussed E.M.'s Individual Education Plan (IEP) at school. As part of her educational plan an Evaluation Team Report is completed every three or four years. The most recent report took place in 2017. As part of the evaluation an IQ test was administered where E.M. scored a forty-six; 100 is the average score for the test. As part of E.M.'s IEP, a special needs teacher attends classes with her at all times.

{¶6} Next, Appellee called E.M. to testify. E.M. testified that Appellant is her uncle. E.M. said that Appellant went to F.M.'s house and asked E.M. to help him clean out his garage. After E.M. had helped clean the garage, she testified Appellant shut the garage door and put a table in front of the door so E.M. could not leave. E.M. did not understand what was happening. Next, Appellant unzipped E.M.'s jacket and started kissing her. He pulled her pants and leggings down. E.M. then testified Appellant inserted his penis into her rectum and inserted two fingers into her vagina. E.M. further testified, Appellant whispered to her, "That pussy is mine." Tr. at 410. Appellant then threatened E.M. that if he saw her again, he would continue to do this to her.

{¶7} E.M. said while this was happening, her friend, Dillen Richards, had attempted to call her four times, but Appellant would not let her answer. E.M. texted Dillen asking for his help. E.M. said, "I was locked in there, and he raped me. And I didn't know

what to do." Tr. at 413-14. E.M. explained that she did not try to push him away because, "he was getting mad at me." Tr. at 416. She believed that if she fought by pushing him away or kicking him, that she would be in trouble. E.M. testified her cousin took her back to her aunt's house. After the police interviewed E.M., she went to the hospital.

**{¶8}** Dr. Anthony Midkiff performed the initial medical screening on E.M. when she arrived at the hospital. Andrea Storm, a Sexual Assault Nurse Educator (S.A.N.E.), treated E.M. at the hospital. Storm identified a visible anal tear, and blunt force trauma to E.M.'s cervix also evidenced by a tear.

**{¶9}** Dawn Frybeck, an expert in DNA analysis, testified that the anal swabs indicated the presence of a partial male DNA profile. Frybeck performed a Y-STR testing which targets the male chromosomes. This testing looks at twenty-three different markers within the same chromosome. Since the Y chromosome is passed from father to son, a father and son are expected to have the same Y-STR DNA profile. In this case, Frybeck retrieved information from seven of the twenty-three markers, and the information did match Appellant. Each male in Appellant's lineage would be expected to have this DNA profile; however, Frybeck testified the odds of a random person outside of the lineage having the same DNA profile would be one in every four hundred, thirty-five individuals.

**{¶10}** The trial court gave a special jury instruction only for Counts Two and Four as it pertains to the definition of force.

> "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. When the relationship between the victim and the defendant is one of child and authority figure, the element of force need not be openly displayed or

physically brutal. It can be subtle, slight, psychologically and emotionally powerful. Evidence of an expressed threat of harm or evidence of significant physical restraint is not required. If you find beyond a reasonable doubt that under the circumstances in evidence E.M.'s will was overcome by fear, duress, or intimidation, the element of force has been proved.

**{¶11}** Tr. 883-885, 907-898.

**{¶12}** On March 10, 2020, a jury convicted Appellant on all four counts. For the purposes of sentencing, Count Two and Count Four merged into Count One and Count Three, respectively. On Counts One and Three, Appellant was sentenced to eleven years, with both sentences to be served consecutively. Appellant was sentenced to an aggregate minimum term of twenty-two years to a maximum term of twenty-seven and a half years in prison.

### ASSIGNMENT OF ERROR

**{¶13}** On March 25, 2020, Appellant filed a notice of appeal. He herein raises the following two Assignments of Error:

**{¶14}** "I. THE TRIAL COURT ERRED BY PROVIDING THE JURY WITH A JURY INSTRUCTION ABOUT AUTHORITY FIGURES APPLYING PSYCHOLOGICAL FORCE FOR PURPOSES OF RAPE PURSUANT TO *STATE V. ESKRIDGE*.

**{¶15}** "II. APPELLANT'S RAPE CONVICTIONS ARE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE."

### I.

**{¶16}** In Appellant's first Assignment of Error, Appellant argues the trial court abused its discretion when instructing the jury that evidence of physical restraint is not

required when the victim is a minor of sixteen-years old, and the defendant is the victim's uncle, but they are not particularly close. Appellant also argues this instruction was not harmless, as it probably misled the jury in a matter materially affecting the defendant's substantial rights. We disagree.

{¶17} It is unnecessary to address the appropriateness of the jury instruction given on Counts Two and Four, as Appellant was also found guilty on Counts on One and Three. Counts Two and Four merged into Counts One and Three respectively, and the trial court sentenced Appellant on Counts One and Three.

{¶18} It is well-established that juries are presumed to follow and obey the limiting instructions given them by the trial court. *State v. Davis*, 5th Dist. Richland No. 14 CA 34, 2015-Ohio-889, 31 N.E.3d 1204, ¶54, *citing State v. DeMastry*, 155 Ohio App.3d 110, 127, 799 N.E.2d 229, 2003-Ohio-5588, ¶84; *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991); *Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122L.Ed.2d 317 (1993). "A presumption always exists that the jury has followed the instructions given to it by the trial court." *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), at paragraph four of the syllabus, *rehearing denied*, 54 Ohio St.3d 716, 562 N.E.2d 163.

{¶19} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338, 620 N.E.2d (3rd Dist.1993). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5

Ohio St.3d 217, 450 N.E.2d 1140 (1983). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

{¶20} Crim.R. 30(A) governs instructions and states:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

On appeal, a party may not assign as error the giving or failing to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

{¶21} In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) the United States Supreme Court held that because failing to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. Crim.R. 52(A) defines harmless error as any "error, defect, irregularity, or variance which does not affect substantial rights."

**{¶22}** In the case *sub judice,* after giving the jury instructions for Count One and Count Three to the jury, the trial court judge specified, "In Count 2 and Count 4, Daniel Moore is charged with a second type of rape. He denies that he committed these crimes. I will now instruct you on the law you need to evaluate these charges." The trial court appropriately bifurcated the first set of jury instructions from the jury instructions provided for Count 2 and Count 4. As such, we find the trial court did not abuse its discretion when providing the *Eskridge* jury instruction only for Counts 2 and 4.

**{¶23}** Appellant's First Assignment of Error is overruled.

**II.**

**{¶24}** In Appellant's second Assignment of Error, Appellant argues that the jury's guilty verdict is against the manifest weight of the evidence and not supported by sufficient evidence. We disagree.

**{¶25}** Sufficiency of evidence and manifest weight of the evidence are separate and distinct legal standards. *State v. Thompkins*, 78 Ohio St.3d 380. Essentially, sufficiency is a test of adequacy. *Id.* A sufficiency of the evidence standard requires the appellate court to examine the evidence admitted at trial, in the light most favorable to the prosecution, to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259.

**{¶26}** As opposed to the sufficiency of evidence analysis, when reviewing a weight of the evidence argument, the appellate court reviews the entire record, weighing the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts of evidence, the jury clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380.

**{¶27}** Under the weight of the evidence argument, the appellate court shall consider the same evidence as when analyzing the sufficiency of the evidence argument. Appellant argues the jury clearly lost its way as their conviction of Appellant based on the total weight of the evidence was a manifest miscarriage of justice.

**{¶28}**  The State indicted Appellant on Count 1 and Count 3, Rape (when the other person's ability to resist or consent is substantially impaired because of a mental condition and the offender knows, or has reasonable cause to believe, that the other person's ability to resist or consent is substantially impaired because of a mental condition), in violation of R.C. 2907.02(A)(1)(c), and Count 2 and Count 4, Rape (when a defendant engages in sexual conduct with another and purposely compels another person to submit by force or threat of force), in violation of RC. 2907.02(A)(2).

**{¶29}**  R.C. 2907.02(A) states:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

…

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the

other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

**{¶30}** With respect to Count 1 and Count 3, Appellant argues E.M.'s ability to resist or consent was not substantially impaired because of her mental condition.

**{¶31}** Substantial impairment does not have to be proven through expert medical testimony. *State v. Hillock*, 7th Dist. Harrison No. 02-538-CA, 2002-Ohio-6897, citing *State v. Tate*, 8th Dist. No. 77462 (Oct. 26, 2000). In *Hillock*, the Seventh District Court of Appeals found that the State presented sufficient evidence that the victim was substantially impaired by her mental condition where the victim had an I.Q. of 64, and the victim was fourteen years old, but functioned at a third-grade level.

**{¶32}** With respect to Count 2 and Count 4, Appellant argues there was no evidence of overt force or threat of force.

**{¶33}** At trial, the State produced evidence that Appellant knew of E.M.'s impairment through the testimony of Detective Clapp. Lorentino Brunetti, the school psychologist, testified E.M. had an IQ of forty-six and was functioning at a first- or second-grade level. Appellee also produced evidence through the testimony of E.M. that after E.M. and Appellant finished cleaning Appellant's garage, Appellant pulled a table in front of the door, trapping E.M. inside the garage. Appellant told E.M. to pull her pants down, and then proceeded to take E.M.'s jacket off. Next, Appellant did pull E.M.'s pants and leggings down, inserted his penis into her rectum, and two fingers into her vagina. E.M.

felt if she struggled, pushed, kicked, or persisted she would get in trouble, as Appellant was getting mad at her. Andrea Storm then testified that E.M. had a rectal/anal tear visible to the naked eye, and had suffered blunt force trauma to the cervix. After the act, Appellant threatened E.M. he would do this again the next time he saw her.

{¶34} We find the State produced sufficient evidence, if believed by a jury, that Appellant knowingly engaged in sexual conduct with a person whose ability to resist or consent was impaired, and Appellant knew of the impairment, and that Appellant engaged in sexual conduct with another when Appellant purposely compelled the other person to submit by force or threat of force. Our review of the entire record fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. Appellant was not convicted against the manifest weight of the evidence.

{¶35} Appellant's Second Assignment of Error is overruled.

{¶36} For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is hereby affirmed.

By: Wise, John, J.
Gwin, P. J., and
Wise, Earle, J., concur.


JWW/br 0127