[Cite as *State v. Cole*, 2020-Ohio-1589.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

ANTHONY COLE

    Appellant

C.A. No.     29362

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 18 05 1634

DECISION AND JOURNAL ENTRY

Dated: April 22, 2020

TEODOSIO, Presiding Judge.

{¶1}    Appellant, Anthony Cole, appeals from his conviction for domestic violence in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    Mr. Cole was in a long-term, off-and-on relationship with his live-in girlfriend ("G.S."). According to G.S., Mr. Cole accused her of cheating on him one morning and began choking her in bed. When she pushed him away, he bit her on the hand and said he would kill her. After Mr. Cole left for work and G.S. went through her typical morning routine with her son, daughter, and granddaughter, she went to the police station and reported the incident.

{¶3}    Mr. Cole was charged with both felony-three domestic violence and domestic violence menacing. After a jury trial, he was found guilty of domestic violence, but not guilty of domestic violence menacing. The trial court sentenced him to eighteen months in prison.

{¶4}    Mr. Cole now appeals from his conviction and raises three assignments of error for our review.

II.

## ASSIGNMENT OF ERROR ONE

APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF ARTICLE IV, SECTION 3 OF THE OHIO CONSTITUTION * * *.

{¶5}    In his first assignment of error, Mr. Cole argues that his conviction was against the manifest weight of the evidence.  We disagree.

{¶6}    "[A] challenge to the manifest weight of the evidence concerns the State's burden of persuasion."  *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring).  This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony."  *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.  This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  *See also Otten* at 340.

{¶7}    Mr. Cole was convicted of domestic violence under R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household

member." The parties stipulated at trial that Mr. Cole was previously convicted of two other domestic violence offenses, so the offense in this matter was enhanced to a felony of the third degree. R.C. 2919.25(D)(4). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A "family or household member" includes a person living as a spouse, who is residing or has resided with the offender. R.C. 2919.25(F)(1)(a)(i). A "person living as a spouse" is "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

{¶8} G.S. testified that she was living with Mr. Cole in Akron in May of 2018. Although they were never married, she was in an intimate relationship with Mr. Cole off-and-on for twenty-some years, basically living as husband and wife. They have one teenage son together. She testified that she was engaged in sexual intercourse with Mr. Cole sometime between 3:00 A.M. and 4:00 A.M. on May 11, 2018, when Mr. Cole accused her of cheating on him and started choking her around her neck. She clarified that this was not simply "rough sex" because she does not do "stuff like that." According to G.S., she could not breathe while Mr. Cole was choking her. She pushed Mr. Cole back at one point, but he bit her finger and said, "Well, I'll kill you" and "I (sic) go up to your job and shoot you and him." G.S. testified that she never screamed because her son was in the next room and she did not want to get him involved. She testified that she suffered scratches on her neck and hand, but did not seek medical attention. After Mr. Cole left for work,

G.S. sent her son to school, visited her daughter down the street to help send her granddaughter to school, and then went to the police station to report the incident.

{¶9}    Sergeant Darletta Rubin of the Akron Police Department testified that G.S. came into the police department around 11:50 A.M. on May 11, 2018, to file a domestic violence report. The sergeant has investigated hundreds of domestic violence cases in her twenty-seven years of experience, and testified that it is not unusual for victims to physically come to the police station to report domestic violence instead of calling on the phone. Moreover, she claimed some people report domestic violence immediately, while others report it days later. Sergeant Rubin described G.S. as appearing rushed, a little disheveled, shaken, scared, frightened, and apprehensive that day. G.S. was talking low, but a little fast, so the sergeant asked her to speak up and slow down. G.S. then told the sergeant that Mr. Cole had choked her, bitten her, and threatened to kill her. The sergeant observed what appeared to be recent scratches and a little bruising on G.S.' neck as well as an abrasion on her left thumb. She took pictures of the injuries, which were entered into evidence at trial. She testified that the injuries were consistent with G.S.' explanation that Mr. Cole choked and bit her that morning.

{¶10}  Mr. Cole testified on his own behalf at trial. He admitted to living with G.S. in her home for twelve-to-fifteen years, including in May of 2018. He testified that he bought groceries and furnishings for the home and thought he paid the rent most of the time. He acknowledged that G.S. received food stamps, but claimed that she would sell them. Mr. Cole testified that he has accused G.S. of cheating on multiple occasions, and that she admitted she was cheating on him with his cousin "probably days" before May 11, 2018. He agreed on cross-examination that everything G.S. testified to earlier was true, except he denied assaulting her. He testified that the

couple engaged in sexual intercourse and talked about whether he should move out, but he did not bite or choke her.

{¶11} Mr. Cole now argues on appeal that the jury lost its way and created a manifest miscarriage of justice because the evidence of G.S.' injuries was inconclusive and inconsistent with the alleged assault that occurred. He asserts that scratches, an abrasion, and "a little bruising" around the neck are inconsistent with the severe injuries one would most likely sustain when choked around the neck by someone the size and stature of Mr. Cole. He further notes that G.S.' thumb was not bleeding and her skin was not broken from the alleged bite. He claims that the time gap between the alleged incident and when G.S. reported it to police was suspect, and may mean that her injuries were sustained after he had already left for work. He directs us to his own testimony that he did not bite G.S. and argues that no DNA evidence, forensic evidence, or eyewitness testimony was presented to corroborate G.S.' allegation that he bit her. He claims that G.S. sought revenge after Mr. Cole ended their relationship by making these false allegations against him.

{¶12} Mr. Cole explicitly agreed with most of G.S.' testimony at trial, and only disputed her claims that he choked and bit her. The jury was therefore presented with conflicting testimony in addition to photographic evidence of the injuries sustained, and "'the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. G.S. testified that Mr. Cole choked and bit her, while Mr. Cole testified that he

did not. Sergeant Rubin testified that the injuries she observed on G.S. that day were consistent with her story of being choked and bitten. The actual severity of those injuries is inconsequential, as the requisite physical harm for domestic violence may consist of any injury regardless of its gravity or duration. *See* R.C. 2901.01(A)(3). The sergeant's testimony also established that victims of domestic violence do not always report such incidents immediately, but sometimes delay contacting the police for days. Although Mr. Cole's defense at trial was that G.S. fabricated the allegations in this case for personal and financial reasons, the jury was not required to believe that theory, and we cannot say that it erred in choosing to believe G.S.' version of events instead. This Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13.

{¶13} In reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the trial court, in resolving any conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. *See Otten* at 340. Mr. Cole has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins* at 387.

{¶14} Mr. Cole's first assignment of error is overruled.

### ASSIGNMENT OF ERROR TWO

THE TRIAL COURT'S SENTENCE OF APPELLANT WAS CONTRARY TO
LAW * * *.

**ASSIGNMENT OF ERROR THREE**

THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S SENTENCE OF APPELLANT * * *.

{¶15} In his second assignment of error, Mr. Cole argues that the trial court erred in imposing a sentence that was contrary to law for a variety of reasons. In his third assignment of error, he argues that the trial court erred in imposing a sentence that was not supported by the record.

{¶16} In the State's brief, it argues that Mr. Cole's second and third assignments of error will be moot if he has completed his sentence by the time this Court issues its decision. "A case is moot if it involves 'no actual genuine controversy which can definitely affect the parties' existing legal relationship.'" *State v. Ross*, 9th Dist. Lorain No. 18CA011284, 2019-Ohio-323, ¶ 6, quoting *Harris v. Akron*, 9th Dist. Summit No. 24499, 2009-Ohio-3865, ¶ 7. "As a general rule, courts will not resolve issues which are moot." *Boncek v. Stewart*, 9th Dist. Summit No. 21054, 2002-Ohio-5778, ¶ 10. *See also Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, ¶ 18.

{¶17} Mr. Cole was released from prison on February 10, 2020. According to the Supreme Court of Ohio, "'[n]either this court's jurisprudence nor Ohio's criminal-sentencing statutes allow a trial court to resentence a defendant for an offense when the defendant has already completed the prison sanction for that offense.'" *State v. Trice*, 9th Dist. Summit Nos. 29258 and 29283, 2019-Ohio-5098, ¶ 26, quoting *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, ¶ 19. Thus, even assuming arguendo that these two assignments of error have merit, we cannot reverse the trial court's judgment with respect to his sentence and then remand for resentencing. *See id.*

{¶18} Accordingly, because Mr. Cole's second and third assignments of error are moot, they are therefore overruled on that basis.

III.

{¶19} Mr. Cole's first assignment of error is overruled. His second and third assignments of error are moot, and are therefore overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
SCHAFER, J.
CONCUR.


APPEARANCES:

BRIAN A. SMITH, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.