[Cite as *State v. Calhoun*, 2021-Ohio-1713.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

v.

MICHAEL CALHOUN

    Appellant

C.A. No.     29604

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 19 07 2295

DECISION AND JOURNAL ENTRY

Dated: May 19, 2021

HENSAL, Presiding Judge.

{¶1} Michael Calhoun appeals his felonious-assault convictions from the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} This appeal involves the non-fatal shooting of the victim, who was seated in the backseat of an SUV when Mr. Calhoun allegedly fired several shots at the SUV, one of which struck the victim in the shoulder. Mr. Calhoun was charged with four counts of felonious assault, all with accompanying firearm specifications. He pleaded not guilty, and the matter proceeded to a jury trial. The following facts were adduced at trial.

{¶3} According to the victim, her friend Diana picked her up one evening to go for a drive. Diana eventually picked up another friend, Marlo. At that point, Diana got into the front passenger seat and Marlo took over the driver's seat. The victim got into the back passenger seat. The three of them then picked up Mia, who needed a ride back to her house. While the testimony

varied slightly, the record indicates that everyone in the SUV was drinking vodka and/or smoking marijuana. Mia described herself as "lit."

{¶4} When they arrived at Mia's house, Mia indicated that she was locked out. Mia called her boyfriend, Marquis, who had a key. While waiting for Marquis to arrive, Marlo attempted to help Mia kick down the door to her house, but was unsuccessful. Marlo then got back into the driver's seat of the SUV.

{¶5} When Marquis arrived, Mia walked up to his car and spoke with him as he remained seated in the driver's seat. According to Mia, Marquis was upset that she smelled like alcohol, and that she had been in a car with Marlo. A verbal argument ensued, and Marquis attempted to get out of his car, threatening to beat up Marlo. Mia leaned against Marquis's car door to prevent him from getting out. At the same time, the sole passenger in Marquis's car stepped out of the front passenger seat. The passenger was wearing a dark track suit with a hoodie covering part of his head. The passenger then pulled out a gun and fired eight shots at the SUV that the victim, Diana, and Marlo were still seated in. One of the bullets struck the victim in the shoulder. Marlo immediately sped off, leaving Mia at the scene, and drove directly to the hospital. Mia then got into Marquis's car with Marquis and the shooter, and drove to a liquor store.

{¶6} The victim underwent multiple surgeries for the injuries she sustained, and returned home from the hospital several weeks later. After she returned home, the police interviewed her and presented her with a photo array. The victim identified two of the men in the photo array as the potential shooter, indicating that she was 60% certain as to each man. One of those men was Mr. Calhoun. The victim later saw Mr. Calhoun at a court hearing and told the police that he was the person that shot her. At trial, the victim explained that she went from 60% certain to 100% certain that Mr. Calhoun was the shooter after she saw him in person. She explained that Mr.

Calhoun looked "way younger" in the photos, which is why she did not immediately identify him with 100% certainty.

{¶7} The police also interviewed Mia, who was initially uncooperative. She later identified Mr. Calhoun as the shooter, and testified that she initially did not tell the police the truth because she was scared. She testified that she knew Mr. Calhoun because he was Marquis's friend. Diana testified that she was unable to identify the shooter because she was focused on the gun. Marlo, the remaining occupant of the SUV, did not testify.

{¶8} The State called Marquis as a witness. He answered several preliminary questions and indicated that he and Mr. Calhoun had been friends since they were kids. He then refused to answer any additional questions, asserting his Fifth Amendment right. The State moved for transactional immunity, which the trial court granted. Notwithstanding, Marquis continued to refuse to answer any questions. The State then presented Marquis with Exhibit 24, which was a hand-written note that Marquis purportedly authored and gave to Detective Ronald Garey ("the note" or "Exhibit 24"). The note identified Mr. Calhoun as the shooter. Marquis indicated that he did not remember writing the note, and that he had never seen Detective Garey before. Marquis then refused to answer any additional questions. His defense counsel moved for a mistrial based upon the fact that Marquis continued to refuse to answer questions, yet the State continued asking questions, including questions about his purported note that identified Mr. Calhoun as the shooter. The trial court denied defense counsel's motion.

{¶9} Detective Garey then testified that he met with Marquis, and that Marquis wrote the note to him because a medical issue prevented Marquis from speaking. Over defense counsel's objection, Detective Garey was permitted to read the note aloud. The note stated, in part, that

"Mich[a]el Calhoun shot that girl for no reason[.]" Over defense counsel's objection, Exhibit 24 was admitted into evidence.

{¶10}   Mr. Calhoun testified on his own behalf.  He testified that he was not present for the shooting, and that he was not even friends with Marquis at that time.   Mr. Calhoun indicated that the victim and Mia, both of whom identified him as the shooter, were lying.  The defense presented no additional witnesses and, after closing arguments, the trial court instructed the jury. In doing so, the trial court gave a limiting instruction with respect to Exhibit 24, stating:

> You have heard evidence that Marquis * * * made a statement on an earlier occasion and that this statement may be inconsistent with his testimony here at trial.  This earlier statement was brought to your attention to help you in evaluating the witness's believability here in court.  In other words, if on an earlier occasion the witness made a statement that is inconsistent with his testimony in court, you may consider the inconsistency in judging the credibility of the witness at trial.  You may not consider this earlier statement as proof that what was said in the earlier statement was true.  It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact inconsistent with the * * * witness's in-court testimony here.

{¶11}   The jury found Mr. Calhoun guilty of the charged offenses.  The trial court merged two of the counts and sentenced Mr. Calhoun to a total of twenty years in prison.  He now appeals, raising three assignments of error for this Court's review.

## II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PRESENTING
THE UNSWORN WRITTEN STATEMENT OF MARQUIS * * * OVER THE
REPEATED OBJECTION OF MR. CALHOUN.

{¶12}   In his first assignment of error, Mr. Calhoun argues that the trial court erred by:  (1) allowing the State to question Marquis about the contents of Exhibit 24 despite the fact that Marquis repeatedly indicated that he was refusing to answer any questions; (2) allowing the State to question Detective Garey about the contents of Exhibit 24 despite the fact that Marquis had not

testified about its contents; and (3) admitting Exhibit 24 into evidence. He also argues that the trial court's limiting instruction regarding prior inconsistent statements demonstrated a fundamental misunderstanding of when and how the prior-inconsistent-statement rule applies. He concludes that Exhibit 24 was hearsay, that it did not fall within any exception to hearsay, and that admitting its contents into evidence violated the Confrontation Clause of the Sixth Amendment.

{¶13} The Sixth Amendment to the United States Constitution guarantees an accused the right to confront witnesses against him. *Crawford v. Washington*, 541 U.S. 36, 54 (2004). The Confrontation Clause is implicated by the admission of out-of-court statements that are testimonial in nature when the declarant does not testify in the proceeding. *See Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 309-310 (2009). Only testimonial statements make a declarant a "witness" for purposes of the Confrontation Clause, and "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006).

{¶14} Evidentiary rulings that implicate the Confrontation Clause are reviewed de novo and, like challenges to hearsay, are subject to a harmless-error analysis. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97; *State v. McNair*, 9th Dist. Lorain No. 13CA010485, 2015-Ohio-2980, ¶ 33. Thus, even if this Court were to find error, that error "can be held harmless if we determine that it was harmless beyond a reasonable doubt." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 78 (addressing the Sixth Amendment); *State v. Edwards*, 9th Dist. Summit No. 28164, 2017-Ohio-7231, ¶ 42 (addressing hearsay).

{¶15} "Whether a Sixth Amendment error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence." *Conway* at ¶ 78. "Instead, the

question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* Errors can be harmless, however, if the evidence is cumulative of other properly admitted evidence. *State v. Arnold*, 10th Dist. Franklin No. 07AP-789, 2010-Ohio-5622, ¶ 8, citing *Conway* at ¶ 59 ("Error in the admission of testimony may be considered harmless where such testimony is cumulative of other, properly admitted testimony."); *Edwards* at ¶ 42 (citing case law for the proposition that the erroneous admission of hearsay evidence may be harmless beyond a reasonable doubt if that evidence is cumulative of other evidence presented at trial).

{¶16} Even assuming that Exhibit 24 was inadmissible hearsay, and that the trial court erred by allowing the State to question Marquis and Detective Garey about the contents of Exhibit 24, we conclude that any error in that regard was harmless beyond a reasonable doubt. The victim and Mia both identified Mr. Calhoun as the shooter. Mia testified that she knew Mr. Calhoun, that she recognized him as the passenger in Marquis's car, and that she spent time with him and Marquis immediately after the shooting. The victim also testified that, after seeing Mr. Calhoun in person, she was 100% certain that he was the person that shot her. Additionally, the trial court instructed the jury that Exhibit 24 could not be considered for the truth of the matter asserted. The jury is presumed to have followed that instruction. *State v. Moore*, 5th Dist. Richland No. 2020 CA 0038, 2021-Ohio-287, ¶ 18 ("It is well-established that juries are presumed to follow and obey the limiting instructions given them by the trial court.").

{¶17} Having reviewed the record, this Court concludes that any error in the trial court's admission of evidence regarding Exhibit 24 was harmless beyond a reasonable doubt. Accordingly, Mr. Calhoun's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT
EVIDENCE TO SUSTAIN CONVICTION. THE TRIAL COURT ERRED BY
DENYING APPELLANT'S CRIM.R. 29 MOTION.

{¶18} In his second assignment of error, Mr. Calhoun argues that the State presented insufficient evidence to establish that he was the shooter, and that the trial court erred by denying his motion for acquittal under Criminal Rule 29.

{¶19} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "A motion for acquittal under Crim.R. 29(A) is governed by the same standard[.]" *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶20} Mr. Calhoun's sole argument with respect to the sufficiency of the evidence is that the State failed to present credible evidence identifying him as the shooter. More specifically, he argues that the victim's testimony was not credible since she identified him and another man as the shooter with only 60% certainty during the photo array, but later identified him as the shooter with 100% certainty after she saw him in person at a court hearing. He argues that the latter identification was unreliable since it occurred in a highly suggestive environment, that is, while he was detained and in shackles.

{¶21} Mr. Calhoun also argues that Mia's testimony was not credible because she had been in a relationship with Marquis and was pregnant with his child at the time of trial, and because she admitted to being intoxicated on the night of the shooting. He also points to the fact that Mia initially told the police that she did not know who the shooter was, but then later identified him as the shooter. Mr. Calhoun further argues that, without the hearsay statement of Marquis identifying him as the shooter, which the trial court erred by allowing into evidence, the State presented insufficient evidence to identify him as the shooter.

{¶22} Mr. Calhoun's argument sounds in weight, not sufficiency. *State v. McCain*, 9th Dist. Medina No. 18CA0108-M, 2019-Ohio-4392, ¶ 12 ("[A] challenge to credibility sounds in weight, not sufficiency[.]"). The State presented testimony from the victim and Mia, both of whom identified Mr. Calhoun as the shooter. The State, therefore, presented sufficient evidence to establish that Mr. Calhoun was the shooter. *State v. Thomas*, 9th Dist. Summit No. 29124, 2019-Ohio-2104, ¶ 8 (acknowledging that testimony from one witness is sufficient to prove a fact). Accordingly, his second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶23} In his third assignment of error, Mr. Calhoun argues that his convictions are against the manifest weight of the evidence for the same reasons articulated in his second assignment of error. He adds, however, that his own testimony refuted the testimony of the other witnesses since he testified that he was not present for the shooting.

{¶24} Aside from the manifest-weight standard, Mr. Calhoun's argument is three sentences long and attempts to incorporate the arguments made in his second assignment of error. Mr. Calhoun, however, cannot "incorporate the arguments contained in the other assignments of

error to support a different assignment of error." *State, ex rel. Midview Local School Dist. Bd. of Edn. v. Ohio School Facilities Comm.*, 9th Dist. Lorain No. 16CA010991, 2017-Ohio-6928, ¶ 29. "By doing so, [Mr. Calhoun] improperly asks this Court to extrapolate and apply its argument in a prior assignment of error." *Id.* "This approach also fails to satisfy the requirements that an appellant set forth a separate argument for each assignment of error." *Id.* citing App.R. 12(A)(2) and App.R. 16(A)(7). We, therefore, decline to address Mr. Calhoun's third assignment of error to the extent that it requires this Court to extrapolate and apply the arguments raised in his second assignment of error. *See Vogel v. Northeast Ohio Media Group LLC*, 9th Dist. Medina No. 19CA0003-M, 2020-Ohio-854, ¶ 16.

{¶25} To the extent that Mr. Calhoun supplements his arguments by adding that his testimony refuted the testimony of the State's witnesses, a conviction is not against the manifest weight of the evidence simply because the jury chose to believe the State's version of the events. *State v. Cole*, 9th Dist. Summit No. 29362, 2020-Ohio-1589, ¶ 12, quoting *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13 ("This Court has consistently held that '[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'"). Mr. Calhoun's third assignment of error is overruled.

### III.

{¶26} Mr. Calhoun's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

TEODOSIO, J.
SUTTON, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.