[Cite as *State v. Balmert*, 2024-Ohio-1207.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | | C.A. No. 22CA011908 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| EDWARD BALMERT | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. 20CR103223 |

DECISION AND JOURNAL ENTRY

Dated: March 29, 2024

SUTTON, Judge.

**{¶1}** Defendant-Appellant Edward Balmert appeals the judgment of the Lorain County Court of Common Pleas. For the reasons that follow, this Court affirms, in part, and reverses, in part.

I.

**Relevant Background Information**

**{¶2}** On June 9, 2020, Mr. Balmert struck C.G., a trooper with the Ohio State Highway Patrol, with his vehicle while she was directing traffic at the intersection of Middle Ridge Road and State Rt. 2. The accident occurred in daylight hours with dry weather conditions, and C.G. was wearing a reflective vest. As a result of the accident, C.G. sustained life altering injuries which ended her career as an Ohio State Highway Patrol trooper. Mr. Balmert voluntarily submitted to providing a urine sample, performing field sobriety tests, and undergoing two drug evaluations.

**{¶3}** Mr. Balmert was indicted for: (1) aggravated vehicular assault, in violation of R.C. 2903.08(A)(1)(a), a felony of the third degree; (2) vehicular assault, in violation of R.C. 2903.08(A)(2)(b), a felony of the fourth degree; (3) operating a vehicle while under the influence of alcohol, drugs, or a combination thereof in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; and (4) operating a vehicle while under the influence of a listed controlled substance or listed metabolite of a controlled substance, in violation of R.C. 4511.19(A)(1)(j)(viii)(II), a misdemeanor of the first degree.

**{¶4}** Mr. Balmert pleaded not guilty and waived his right to a jury trial. After a bench trial, the trial court found Mr. Balmert guilty of aggravated vehicular assault and operating a vehicle while under the influence of a listed controlled substance or listed metabolite of a controlled substance. The trial court sentenced Mr. Balmert to two years mandatory imprisonment for aggravated vehicular assault and three-days at the Lorain County Correctional Facility for operating a vehicle while under the influence of a listed controlled substance or listed metabolite of a controlled substance. The trial court also sentenced Mr. Balmert to mandatory post-release control.

**{¶5}** Mr. Balmert now appeals raising three assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED BY NOT DISMISSING THE AGGRAVATED VEHICULAR ASSAULT CHARGE UNDER CRIM.R. 29 BECAUSE OF INSUFFICIENT EVIDENCE TO SUPPORT PROXIMATE CAUSE.**

**{¶6}** In his first assignment of error, Mr. Balmert argues his conviction for aggravated vehicular assault was not supported by sufficient evidence. Specifically, Mr. Balmert argues the

State failed to prove the accident was the proximate result of having prohibited marijuana metabolite levels in his urine. We limit our discussion likewise.

{¶7} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶8} Pursuant to R.C. 2903.08:

(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways:

(1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance[.]

Further, R.C. 4511.19(A)(j)(viii)(II) states:

No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply: * * * The person has a concentration of marihuana metabolite in the person's urine of at least thirty-five nanograms of marihuana metabolite per milliliter of the person's urine or has a concentration of marihuana metabolite in the person's whole blood or blood serum or plasma of at least fifty nanograms of marihuana metabolite per milliliter of the person's whole blood or blood serum or plasma.

{¶9} Mr. Balmert, in arguing the State failed to prove the accident was the proximate result of having prohibited marijuana metabolite levels in his urine, relies upon *State v. Moore*,

6th Dist. Wood No. WD-18-030, 2019-Ohio-3705. In *Moore* at ¶ 27, the Sixth District Court of Appeals reversed the appellant's conviction for aggravated vehicular homicide, explaining:

> a review of the record shows there is no evidence that appellant's act of driving with a prohibited concentration of cocaine in her blood was the direct cause of Etzinger's death, and without which, his death would not have occurred. *The state furnished no evidence regarding the potential effects that a prohibited concentration of cocaine in a person's blood would have on a person, or on a person's ability to operate a vehicle.* Without such evidence, the state failed to prove that as the proximate result of appellant driving with a prohibited concentration of cocaine in her blood, appellant caused Etzinger's death.

(Emphasis added.)

{¶10} In opposing Mr. Balmert's argument, the State points to *State v. Massucci*, 6th Dist. Lucas No. G-4801-CL-201901302-000, 2021-Ohio-88, a more recent Sixth District Court of Appeals decision. In *Massucci*, a road worker was struck and killed by an individual driving with a prohibited concentration of marijuana metabolite in his blood. In determining the State produced sufficient evidence the accident was the proximate result of the appellant's impairment from marijuana, the *Massucci* Court stated:

> the instant case is replete with evidence supporting impairment and causation. As to impairment, appellee presented evidence that appellant had marijuana and paraphernalia in the vehicle; the OSHP investigation concluded that appellant was impaired by marijuana at the time of the crash due to observations by Clay and the [Drug Recognition Expert], including appellant's performance on field sobriety tests, a greenish cast to his oral cavity, and plant matter between his teeth; and the blood draw and urine test results were admitted into evidence.
>
> As to causation, appellant presented indicators of impairment on divided-attention skills tests; told officers he never saw the warning signs, construction vehicles, or the workers; and the law enforcement witnesses testified marked-lanes violations are most common among impaired drivers. The crash reconstruction [showed] appellant braked less than a second before impact, and the lack of evasive action is often explained by distraction or impairment. The urine and blood samples were taken about five hours after the crash; Forney explained that although THC might not be detectable in the blood after this amount of time, it can still affect the brain.

*Id.* at ¶ 73-74.

{¶11}   Here, like *Massucci*, Sergeant David Francway of the Ohio State Highway Patrol testified Mr. Balmert, after being *Mirandized*, voluntarily submitted to a urine sample and admitted to using hemp.   Based upon Mr. Balmert's admission, Sergeant Francway, a certified Drug Recognition Expert, performed Standardized Field Sobriety Tests on Mr. Balmert.   Additionally, Sergeant Francway performed secondary Advanced Roadside Impaired Driving Evaluations. The secondary testing included the Lack of Convergence Test and the Modified Romberg Balance Test.   Sergeant Francway saw a lack of convergence in Mr. Balmert's left eye, which is a clue noted in cannabis use, and he also saw Mr. Balmert rocking back and forth during the Modified Romberg Balance Test.   Sergeant Francway noticed tremoring throughout Mr. Balmert's body and eyes, which is consistent with cannabis use.   Sergeant Francway also performed an oral and nasal cavity check to look for "recent indicators of marijuana use[.]"   Sergeant Francway explained, "smoking anything is going to cause dryness to the mouth, discoloration, depending on what it is.   So cannabis, obviously, enhances that."   Upon performing the cavity search, Sergeant Francway noticed Mr. Balmert had a "very dry mouth," and "[t]here was a film on the tongue, most likely a pasty film, which is conducive to marijuana use. "  Mr. Balmert also had raised taste buds which is "[a] body's natural reaction to cannabis use[.]"

{¶12}   As to how marijuana affects a person's ability to operate a motor vehicle, Sergeant Francway explained:

> With marijuana or cannabis use, it slows the body's reaction time.   That's our concern as motor vehicle enforcement officers, that when somebody uses that particular drug, as well as other drugs, is that it depresses the reflexes so your reaction time is slowed very much.
>
> So a good example is if a person not under the influence were to play catch and throw a baseball, they're able to react and grab it and not get hit in the face with the ball.   Where somebody under the influence may miss it because their reaction is too slow and they don't react in time.

Obviously, operating a motor vehicle requires reaction time. Studies have been found that the body's normal reaction time is 1.47 seconds for them to react to something that they see. So that doesn't necessarily account for braking, speed, and travel. It takes me one and a half seconds to realize and do something.

So when I take a particular drug like marijuana, it slows that, which then slows my ability to stop my car, move my car, take evasive actions.

After arresting Mr. Balmert for driving under the influence, Sergeant Francway had an independent third-party Drug Recognition Expert evaluate Mr. Balmert at the highway patrol post.

{¶13} Lieutenant Scott Schmoll, of the Medina County Sheriff's Office, testified he is a Drug Recognition Expert and he was contacted to do a drug influence evaluation in this matter. Lieutenant Schmoll explained a drug influence evaluation is a 12-step standardized process. During Mr. Balmert's evaluation, Lieutenant Schmoll indicated he admitted to smoking hemp every day and to using marijuana a week prior to the accident. As to indicators Mr. Balmert was impaired during the evaluation, Lieutenant Schmoll observed: (1) a lack of convergence in his left eye; (2) pronounced eyelid tremors; (3) a two-inch sway both front to back and side to side during the Modified Romberg Balance Test; (4) clues on both the Walk and Turn and One Leg Stand Tests; and (5) clues on the Finger to Nose Test such as moving his head forward, holding his finger below the tip of his nose for a prolonged time, commenting "I don't know why I keep holding it up there[,]" and missing his nose completely. Based on this testing, Lieutenant Schmoll opined, "Mr. Balmert was under the influence of [c]annabis and unable to operate a vehicle safely."

{¶14} Further, as to the effects cannabis has on a person's ability to safely operate a motor vehicle, Lieutenant Schmoll stated:

So some of the indicators that we look for, some of the things that the [cannabis] will do is it will impair the ability of a person's time and depth perception or time and space perception. Lack of concentration, the alteration of formation of thoughts, you know. Sometimes it's difficult to [do] things that we do when we drive, we have to concentrate on what we're doing. If you have a drug that is [] impairing your ability or your lack of concentration, the fact that time and space

deficit there, you think you've got 50 feet to stop and you've only got ten feet to stop because your depth perception is off because of how it is impairing your ability to see things and react to things. Slowed reaction time is another one.

{¶15} Emily McAnulty, a criminalist with the Ohio State Highway Patrol Crime Lab, testified Mr. Balmert's urine sample contained a prohibited level of marijuana metabolite of 316 nanograms per milliliter over the per se amount of 35 nanograms. Ms. McAnulty explained, "[t]his particular metabolite * * * is a breakdown product specific from what is Delta-9 THC or Tetrahydrocannabinol THC, like the parent drug THC." Further, Ms. McAnulty testified a CBD product that does not contain THC would not produce this particular THC metabolite.

{¶16} In viewing this evidence in a light most favorable to the State, the trier of fact could reasonably conclude that proximate causation was proven beyond a reasonable doubt and Mr. Balmert's conviction for aggravated vehicular assault is supported by sufficient evidence.

{¶17} Accordingly, Mr. Balmert's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED BY FINDING [MR. BALMERT] GUILTY OF AGGRAVATED VEHICULAR ASSAULT BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT [MR. BALMERT'S] MARIJUANA METABOLITE LEVELS WERE A PROXIMATE CAUSE OF THE CRASH.**

{¶18} In his second assignment of error, Mr. Balmert argues his conviction for aggravated vehicular assault is against the manifest weight of the evidence. Specifically, Mr. Balmert argues the trial court clearly lost its way in determining his metabolite levels were a proximate cause of the crash. We are not persuaded by Mr. Balmert's arguments.

{¶19} As this Court has previously stated:

[i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶20} Moreover, an appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20. "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id.*

{¶21} In his brief, Mr. Balmert attempts to incorporate his legal arguments and caselaw from his first assignment of error, which challenges the sufficiency of the evidence regarding proximate cause, into his second assignment of error, which challenges the manifest weight of the evidence regarding the same. As this Court has previously stated:

> Appellate Rules 12(A)(2) and 16(A)(7) require an appellant to set forth a separate argument in support of each assigned error. *State v. Calhoun*, 9th Dist. Summit No. 29604, 2021-Ohio-1713, ¶ 24. For this reason, an appellant "cannot 'incorporate the arguments contained in the other assignments of error to support a different assignment of error.'" *Id.*, quoting *State ex rel. Midview Local School Dist. Bd. of Edn. v. Ohio School Facilities Comm.*, 9th Dist. Lorain No. 16CA010991, 2017-Ohio-6928, ¶ 29. In doing so, Mr. McKnight "improperly asks this Court to extrapolate and apply [his] argument in a prior assignment of error." *State v. Gales*, 9th Dist. Summit No. 29316, 2022-Ohio-776, ¶ 35, quoting *State ex rel. Midview Local School Dist. Bd. of Edn.* at ¶ 29. This Court declines to do so.

*State v. McKnight*, 9th Dist. Medina No. 22CA0027-M, 2023-Ohio-1933, ¶ 10.

**{¶22}** To the extent, however, Mr. Balmert argues weight of the evidence, based upon the trial court's comments before pronouncing Mr. Balmert guilty of aggravated vehicular assault, "[a] trial judge in a bench trial is presumed to know the law and to consider only the relevant, material, and competent evidence in arriving at a decision." *State v. Adkins*, 9th Dist. Wayne No. 22AP0022, 2023-Ohio-3000, ¶ 30, quoting *State v. Diaz*, 9th Dist. Lorain No. 02CA008069, 2003-Ohio-1132, ¶ 39. *See also State v. Coombs*, 18 Ohio St.3d 123, 125(1985) ("A reviewing court must presume that the trial court applied the law correctly. This requirement is violated when the reviewing court isolates two brief extracts from a lengthy transcript and infers therefrom that the trial judge did not understand the law.")

**{¶23}** Here, the trial court stated in relevant part:

\* \* \*

Aggravated vehicular assault. It's the most serious charge in this case. And that [charge] says if you're operating a vehicle and cause serious physical harm while you are violating 4511.19 Subsection (A), which you were violating, the lab result shows that, and you did cause serious physical harm while operating a vehicle while having that level of a metabolite in your system. Therefore, I must find you guilty of Count 1, aggravated vehicular assault, a third degree felony.

\* \* \*

I think [Mr. Balmert's] probably a person with some very serious medical problems, *he's made some choices that increased the risk of having the inability to respond like a normal driver would when the conditions are more serious, they're more complicated and complex, I don't think he was able to handle it.* The proof is in [] the result.

\* \* \*

This wasn't at night. This was in broad daylight. She could be seen. She had sufficient safety equipment on to be observed, and drivers had a responsibility to look at that scene and be extra, extra careful, and that didn't happen.

\* \* \*

Indeed, there is nothing in the record that would overcome the presumption the trial court understood the law in this matter. *See State v. Olah*, 9th Dist. Lorain No. 01CA007826, 2001-Ohio-1641, ¶ 26.

{¶24} Based upon the foregoing, this is not an exceptional case that warrants reversal. The trial court did not clearly lose its way and create such a manifest miscarriage of justice that Mr. Balmert's conviction must be reversed and a new trial ordered.

{¶25} Accordingly, Mr. Balmert's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED BY SENTENCING [MR. BALMERT] TO MANDATORY POST-RELEASE CONTROL BECAUSE [AGGRAVATED] VEHICULAR ASSAULT IS NOT AN OFFENSE OF VIOLENCE.**

{¶26} In his third assignment of error, Mr. Balmert argues the trial court erred in sentencing him to mandatory post-release control for a felony of the third degree which is not an offense of violence. We agree.

{¶27} Pursuant to R.C. 2967.28:

(B) Each sentence to a prison term, other than a term of life imprisonment, for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or *for a felony of the third degree that is an offense of violence and is not a felony sex offense* shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment.

* * *

(C) Any sentence to a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (B)(1) or (4) of this section shall include a requirement that the offender be subject to a period of post-release control of up to two years after the offender's release from imprisonment, *if the parole board, in accordance with division (D) of this section, determines that a period of post-release control is necessary for that offender.*

(Emphasis added.) Further, pursuant to R.C. 2901.01(A)(9), an offense of violence is defined as:

(a) A violation of section 2903.01, 2903.02, 2903.03, 2903.04, 2903.11, 2903.12, 2903.13, 2903.15, 2903.18, 2903.21, 2903.211, 2903.22, 2905.01, 2905.02, 2905.11, 2905.32, 2907.02, 2907.03, 2907.05, 2909.02, 2909.03, 2909.24, 2911.01, 2911.02, 2911.11, 2917.01, 2917.02, 2917.03, 2917.31, 2917.321, 2919.25, 2921.03, 2921.04, 2921.34, or 2923.161, of division (A)(1) of section 2903.34, of division (A)(1), (2), or (3) of section 2911.12, or of division (B)(1), (2), (3), or (4) of section 2919.22 of the Revised Code or felonious sexual penetration in violation of former section 2907.12 of the Revised Code;

(b) A violation of an existing or former municipal ordinance or law of this or any other state or the United States, substantially equivalent to any section, division, or offense listed in division (A)(9)(a) of this section;

(c) An offense, other than a traffic offense, under an existing or former municipal ordinance or law of this or any other state or the United States, committed purposely or knowingly, and involving physical harm to persons or a risk of serious physical harm to persons;

(d) A conspiracy or attempt to commit, or complicity in committing, any offense under division (A)(9)(a), (b), or (c) of this section;

(e) A violation of division (C) of section 959.131 of the Revised Code.

**{¶28}** In determining aggravated vehicular assault is not an offense of violence, the First District Court of Appeals explained:

While this [C]ourt has not addressed whether aggravated vehicular assault meets the definition of an offense of violence, two other appellate districts have determined that it does not. In *State v. Moore*, 4th Dist. Adams No. 18CA1070, 2019-Ohio-1467, ¶ 15, the Fourth Appellate District held that aggravated vehicular assault under R.C. 2903.08(A)(1)(a) is not an offense of violence, reasoning that R.C. 2903.08(A)(1)(a) is not one of the enumerated statutes in R.C. 2901.01(A)(9)(a) nor is it "substantially equivalent" to any of those enumerated statutes. *Id*. As to R.C. 2901.01(A)(9)(c), the [C]ourt explained that one does not violate R.C. 2903.08(A)(1)(a) purposely or knowingly because violations of the OVI statute, upon which the aggravated-vehicular-assault conviction is predicated, are strict-liability violations. *Id*. Thus, the [C]ourt held that the trial court erred in imposing a mandatory term of postrelease control. *Id*. at ¶ 16. The Twelfth Appellate District applied the same reasoning when it held that vehicular assault under R.C. 2903.08(A)(2)(b) also was not an offense of violence. *State v. Johnson*, 12th Dist. Madison No. CA2018-06-020, 2020-Ohio-2676, ¶ 35-36.

We agree with the reasoning of the Fourth and Twelfth Appellate Districts and hold that aggravated vehicular assault under R.C. 2903.08(A)(1)(a) is not an offense of violence under R.C. 2901.01(A)(9). The violation is not one of those enumerated

in division (a), nor is it substantially equivalent to any of those enumerated offenses. Moreover, under division (c), while there is no question that the offense caused physical harm, aggravated vehicular assault is a strict-liability offense. *See* R.C. 2901.21(B) ("When the language defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense.") * * * Finally, divisions (d) and (e) are clearly not applicable.

*State v. Kamara*, 1st Dist. Hamilton No. C-220614, 2023-Ohio-2146, ¶ 9-10.

{¶29} Here, we agree with our Sister Districts' analysis regarding whether aggravated vehicular assault, pursuant to R.C. 2903.08(A)(1)(a), is an offense of violence for purposes of imposing mandatory post-release control. We conclude, similar to our Sister Districts, that aggravated vehicular assault, pursuant to R.C. 2903.08(A)(1)(a), for purposes of imposing post-release control, is not an offense of violence.

{¶30} Accordingly, Mr. Balmert's third assignment of error is sustained. The post-release control portion of Mr. Balmert's sentence is reversed and the case is remanded fur further proceedings consistent with this decision.

III.

{¶31} For the foregoing reasons, Mr. Balmert's first and second assignments of error are overruled. Mr. Balmert's third assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is affirmed, in part, reversed, in part, and remanded for proceedings consistent with this decision.

Judgment affirmed, in part,
reversed, in part, and
remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

STEPHEN HANUDEL, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and MARK ANTHONY KOZA, Assistant Prosecuting Attorney, for Appellee.