NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-1509

THE STATE OF OHIO, APPELLEE, *v*. CRAWFORD, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Crawford*, Slip Opinion No. 2022-Ohio-1509.]

*R.C. 2903.04(A)—The involuntary-manslaughter statute is satisfied when a person causes the death of another as the proximate result of the commission of a felony offense—When the predicate felony offense for involuntary manslaughter is having a weapon while under disability, there is no requirement that the underlying reason for the disability be causally related to the victim's death.*

(No. 2020-0797—Submitted May 11, 2021—Decided May 10, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 108431, 2020-Ohio-2939.

_____

DEWINE, J.

{¶ 1} Late one night, a heated argument among a group of partygoers spiraled out of control, culminating in a fatal shooting. Despite some differing

testimony, we know that Jeremy Crawford fired his gun at the scene. Crawford committed a felony when he fired his gun, because he was under disability as a result of a prior, unrelated drug offense that prohibited him from having or using a firearm.

{¶ 2} Following a jury trial, Crawford was convicted of involuntary manslaughter. Under Ohio law, a person may be found guilty of involuntary manslaughter if he causes the death of another as a proximate result of committing another felony. R.C. 2903.04(A). Here, Crawford's weapons-while-under-disability offense served as the predicate felony for his involuntary-manslaughter conviction.

{¶ 3} Crawford challenges the involuntary-manslaughter conviction. The challenge he raises is a legal one. Crawford does not argue that there was insufficient evidence for the jury to find that his gun use caused Dickens's death. Rather, he argues that as a matter of law, his involuntary-manslaughter conviction is improper because his prior drug offense that formed the basis for his firearms disability was unrelated to the victim's death. In other words, Crawford asks us to hold that for a weapons-while-under-disability crime to serve as a predicate offense for an involuntary-manslaughter conviction the *reason* for the disability must be causally related to the victim's death.

{¶ 4} We find no basis for reading the involuntary-manslaughter statute in the manner Crawford suggests. By its plain terms, R.C. 2903.04(A) simply requires that one cause the death of another "as a proximate result" of the commission of a felony. Thus, we affirm the judgment of the court of appeals, which upheld Crawford's conviction.

## I. BACKGROUND

### A. The night of the shooting

{¶ 5} Dickens was killed as the result of gunshot wounds that he suffered after a late-night party in Cleveland turned into an altercation that spilled out into

2

the street. Testimony introduced at Crawford's trial provides some details about what took place.

{¶ 6} According to witnesses, Crawford showed up at the party to meet up with his then-girlfriend Cassandra. The party mostly featured a small group of Cassandra's and Crawford's family members, though accompanying Crawford was a man unfamiliar to the other partygoers—a man whom Crawford called "Prince."

{¶ 7} Most in attendance were either drunk or high on cocaine and ecstasy, or both. When Crawford arrived at the party, he was confronted by one of Cassandra's relatives who was not fond of Crawford. Dickens quickly went up to face Crawford as well. These two had something of a history—one prior run-in started with a fight and ended with Dickens knocking Crawford out. So, when Dickens told Crawford he'd "beat his ass like he did before," things at the party really started to get heated. By this time the group had moved outside and the situation continued to get worse. At some point, Crawford pulled his gun and fired multiple shots into the air.

{¶ 8} There was conflicting testimony on whether Crawford fired the shots that killed Dickens. At trial, one partygoer claimed she saw Prince fire the fatal shots, and another witness said he heard gunshots shortly after he saw Prince walk up to Dickens. Others said they never saw Prince with a gun.

{¶ 9} The state also called a witness who had not been at the party but who had seen Crawford several days after the party: the ex-girlfriend of Crawford's half-brother. According to her, the couple picked up Crawford after he called his half-brother about a flat tire. While the witness and Crawford were in the car together, Crawford allegedly told her that he brought a gun with him to the party because he knew Dickens would be there, that he shot and killed Dickens during their fight, and that he hit a curb when leaving the scene, damaging his car tire in his getaway. The same witness testified that the next day Crawford told her that "he wanted people to know that he shot into the air" and that it was Prince who fired the fatal

shots.  The witness didn't believe Crawford, testifying, "I already knew that it wasn't true because he told me the other story."

## B.  Crawford appeals following his conviction

{¶ 10} Crawford was indicted on four felony counts: (1) discharging a firearm on or near prohibited premises under R.C. 2923.162(A)(3); (2) felony murder under R.C. 2903.02(B), with the unlawful-discharge-of-a-firearm offense serving as the predicate felony offense; (3) having a weapon while under disability under R.C. 2923.13(A)(3); and (4) involuntary manslaughter under R.C. 2903.04(A), with the weapons-while-under-disability offense serving as the predicate felony offense.

{¶ 11} The jury came back with guilty verdicts on the weapons-while-under-disability and involuntary-manslaughter counts.  It also found him guilty of the unlawful-discharge-of-a-firearm charge, but because there was "no finding of causing serious physical harm," the court reduced that offense from a felony to a misdemeanor.  The jury found Crawford not guilty of felony murder.

{¶ 12} Crawford appealed to the Eighth District Court of Appeals, raising two assignments of error, only one of which is relevant to this appeal.  In his first assignment of error, Crawford asserted that the crime of having a weapon while under disability cannot, as a matter of law, be the underlying proximate cause of a death.  He reasoned that the crime of having a weapon while under disability is generally a possession crime and that mere possession of a firearm cannot cause injury.  The court of appeals rejected this argument, noting that R.C. 2923.13(A)(3) covers more than just possession: the statute makes it a crime for a prohibited person to "knowingly acquire, have, carry or use" a firearm. 2020-Ohio-2939, ¶ 39.  Although the jury verdict did not specify the exact manner in which Crawford violated the statute, the court found "substantial evidence that Crawford [had] used the firearm," with "[m]ultiple eyewitnesses testify[ing] that Crawford brought a weapon to [the] house, brandished the gun, and fired the gun." *Id.*  And while

acknowledging that the evidence did "not make it definitively clear who shot and killed Dickens," the court found that when viewing the evidence in the light most favorable to the state, there was sufficient evidence to support the jury's finding that Dickens's death was the proximate result of Crawford's having violated the statute. *Id.* at ¶ 40. Crawford appealed, and we accepted jurisdiction. 160 Ohio St.3d 1415, 2020-Ohio-4612, 154 N.E.3d 91.

## II. ANALYSIS

{¶ 13} Crawford's appeal to this court relates solely to his conviction for involuntary manslaughter. We accepted jurisdiction over the following proposition of law:

> Having a weapon under a disability cannot, in the ordinary course of things, serve as the predicate offense to involuntary manslaughter.

In his briefing, Crawford elaborated on what he means by this proposition:

> The statutory predicate offense in this case was not that Mr. Crawford "did knowingly acquire, have, carry, or use" the weapon. * * * Rather, the offense was doing one of those things while under a disability due to a prior charge or conviction of attempted drug possession. The plain meaning of the statute, captured effectively by its title, is that the gravamen of the offense is the disability due to the attempted drug possession. What necessarily follows is that for death to be a proximate result of having a weapon under a disability due to the drug offense, that disability is not a mere quibble. It must be necessary to the proximate result.
>
> The question then becomes whether the disability due to attempted drug possession has any causal relationship to the death.

(Emphasis deleted.) Thus, in Crawford's view it is not enough that a death be caused by a violation of the weapons-while-under-disability statute, instead, the death must be related to the "circumstance under which the activity was criminal (that Mr. Crawford had previously been convicted of attempted drug possession)." By this logic, Crawford's felony offense of using a firearm while under disability could not have served as the predicate offense for involuntary manslaughter, because his prior drug offense did not cause Dickens's death.

## A. There is no requirement that the reason for a disability be causally connected to the victim's death

{¶ 14} We need look no further than the plain terms of the involuntary-manslaughter statute to assess Crawford's argument. R.C. 2903.04(A) provides that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." The statute requires two things for an involuntary-manslaughter conviction: (1) that a felony was committed and (2) that a person's death was a proximate result of the commission of that felony. Nothing in the statute requires any connection between the reason for the disability and the death of the victim.

{¶ 15} In referencing the "proximate result" of death "cause[d]" by the defendant's actions, the involuntary-manslaughter statute is simply talking about "proximate cause." *State v. Carpenter*, 2019-Ohio-58, 128 N.E.3d 857, ¶ 51 (3d Dist.) (collecting cases on this point); *see also State v. Owens*, 162 Ohio St.3d 596, 2020-Ohio-4616, 166 N.E.3d 1142, ¶ 9 (recognizing symmetry between "proximate cause" and the felony-murder statute's use of "proximate result").

{¶ 16} Contrary to what Crawford argues, it's of no consequence that the circumstances behind a firearm disability are unrelated to the cause of a victim's death. The foreseeable harm is what matters for proximate cause. *See Johnson v. Univ. Hosps. of Cleveland*, 44 Ohio St.3d 49, 57, 540 N.E.2d 1370 (1989). We are

to ask the "basic question that a proximate cause requirement presents": Does " 'the harm alleged [have] a sufficiently close connection to the conduct' at issue"? (Emphasis added.) *Robers v. United States*, 572 U.S. 639, 645, 134 S.Ct. 1854, 188 L.Ed.2d 885 (2014), quoting *Lexmark Internatl., Inc. v. Static Control Components, Inc.*, 57 U.S. 118, 133, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014). Thus, if an offender uses a firearm in violation of the weapons-while-under-disability statute and the offender's use of that firearm proximately results in the death of another, the elements of involuntary manslaughter are satisfied. We thus reject the legal proposition advanced by Crawford.

### B. We affirm the court of appeals' judgment

{¶ 17} The only argument presented by Crawford in this appeal is the legal one presented above. There is no dispute that Crawford was prohibited from having a firearm, and thus violated the weapons-while-under-disability statute. Crawford has not advanced any argument challenging the jury's conclusion that his violation of that statute proximately caused the victim's death. (In fact, when asked during oral argument about this issue, Crawford's appellate counsel expressly "concede[d] the possibility that a jury could have found proximate cause from the use of the gun," but argued that that was not the issue in this case.) As a consequence, Crawford has provided no basis for us to reverse the decision of the court of appeals.

### III. CONCLUSION

{¶ 18} The involuntary-manslaughter statute is satisfied when a person causes the death of another as the proximate result of the commission of a felony offense. When the predicate offense is having a weapon while under disability, there is no requirement that the underlying reason for the disability be causally related to the victim's death. We thus reject the legal argument presented by Crawford and affirm the judgment of the Eighth District Court of Appeals upholding Crawford's conviction for involuntary manslaughter.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY and FISCHER, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by STEWART and BRUNNER, JJ.

_____

**DONNELLY, J., dissenting.**

{¶ 19} This case is under the court's discretionary review because it is problematic. Unfortunately, it turns out that the proposition of law that appellant, Jeremy Crawford, presented to this court for review does not address the errors that occurred in the trial court. In order to properly respond to Crawford's proposition of law as it is written, the majority must shift away from the reality of the case, and as a result, it does not address the case's real issue. I agree with the majority's holding on a theoretical level, but I must dissent because the holding is unnecessary here. I would dismiss the cause as having been improvidently accepted.

{¶ 20} Although Crawford's argument centers on whether having a weapon while under disability can possibly constitute the proximate cause of a person's death, the problem in this case is that it appears from the record that neither Crawford nor his gun was believed to be the cause in fact of the death of Gary Dickens.

{¶ 21} The parties do not dispute that Crawford was legally prohibited from having a gun, that Crawford had a gun on the night in question, and that he fired his gun into the air during the incident. But the parties also do not dispute that Crawford's friend, Anthony "Prince" Barnes, fired his own gun during the same incident. Although one witness at Crawford's jury trial testified that Crawford later made equivocal statements about who had shot Dickens, none of the witnesses who were present at the shooting testified that they saw Crawford shoot Dickens. Instead, the eyewitness testimony indicated that Prince fired the shots that killed Dickens.

8

{¶ 22} Although the jury found Crawford guilty of unlawfully discharging a firearm under R.C. 2923.162(A)(3), it found that Crawford's discharge of a firearm did *not* cause serious physical harm to Dickens. Further, the jury found Crawford not guilty of felony murder under R.C. 2903.02(B), which would have required a finding that Crawford "cause[d] the death of another as a proximate result of" his unlawful discharge of a firearm. The jury also found Crawford not guilty of felony murder on the alternate theory that Crawford was complicit in Prince's act of fatally shooting Dickens. The jury did, however, find Crawford guilty of involuntary manslaughter, which required a finding that Crawford "cause[d] the death of another * * * as a proximate result of" Crawford's having a weapon while under disability, R.C. 2903.04(A).

{¶ 23} According to the jury's verdicts, Crawford's act of shooting the gun did not proximately cause Dickens's death but, somehow, the act of having the gun while under disability did. One might think that the verdicts are irreconcilable, but they make sense when considering the instructions that the jury received regarding the elements of involuntary manslaughter.

{¶ 24} When providing instructions to the jury on felony murder, the trial judge thoroughly explained causation, as well as complicity, in that context. When providing instructions on involuntary manslaughter, the trial judge mentioned that there was a previous discussion of proximate cause, but the judge did not explain it in the context of this distinct offense. The instructions were not problematic per se, but they were very brief, and any problem with the lack of detail was exacerbated by the state's explanation of the meaning of the involuntary-manslaughter instruction in its closing argument.

{¶ 25} In asserting that Crawford committed felony murder, the state argued that either Crawford shot Dickens or else Prince shot Dickens and Crawford was complicit in Prince's actions. However, when asserting that Crawford committed involuntary manslaughter, the state maintained that it was enough that

Crawford "brought [a gun] to the scene" and "set in motion a whole chain of events which ultimately led to Gary Dickens's death." The state repeatedly insinuated that it did not matter whether Crawford personally shot Dickens and that he was responsible for the shooting death by "escalat[ing] this situation to the point where it [got] out of control so that someone end[ed] up dead." By the end of its closing argument, the state appeared to concede that Prince, rather than Crawford, was the one who fatally shot Dickens.

{¶ 26} Given the foregoing, it appears that the state did not sufficiently establish that Crawford or Crawford's gun was the cause in fact of Dickens's death and that the state led the jury astray by misrepresenting the causation element of involuntary manslaughter. Had these issues been preserved, I believe the more appropriate answer to Crawford's proposition of law would have been: "Having a weapon while under disability cannot, in the ordinary course of things, serve as the predicate offense to involuntary manslaughter *when neither the person under disability nor that person's weapon was the cause in fact of the victim's death*."

{¶ 27} Unfortunately, the foregoing issues were not preserved. The majority rightfully takes pains to point out that it must presume that there was sufficient evidence that Crawford's gun use was the proximate cause of Dickens's death. I have no quarrel with the majority's analysis under such a narrow focus. However, I would stress that the majority's holding today should not be interpreted to apply beyond that narrow focus. And ultimately, because Crawford's argument on appeal did not allow the majority to reach the true flaws in this case, it would be best not to reach a decision at all here. Accordingly, I dissent and would dismiss this case as having been improvidently accepted.

STEWART and BRUNNER, JJ., concur in the foregoing opinion.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Ochocki, Assistant Prosecuting Attorney, for appellee.

Mark A. Stanton, Cuyahoga County Public Defender, and Jeffrey M. Gamso, Assistant Public Defender, for appellant.

Dave Yost, Ohio Attorney General, Benjamin M. Flowers, Solicitor General, and Samuel C. Peterson, Deputy Solicitor General, urging affirmance for amicus curiae, the Ohio Attorney General.

_____