**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Balmert*, Slip Opinion No. 2025-Ohio-5588.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5588

THE STATE OF OHIO, APPELLEE, *v.* BALMERT, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Balmert*, Slip Opinion No. 2025-Ohio-5588.]**

*Criminal law—Aggravated vehicular assault—R.C. 2903.08(A)(1)(a)—Operating a vehicle while under influence of listed metabolite of controlled substance—R.C. 4511.19(A)(1)(j)(viii)(II)—Proximate cause is a separate and distinct element required for an aggravated-vehicular-assault conviction—Aggravated-vehicular-assault conviction was supported by sufficient evidence that the harm of injuring a person on the road was a foreseeable consequence of driving while having a concentration of marijuana metabolites in excess of legal limit—Court of appeals' judgment affirmed.*

(No. 2024-0669—Submitted April 23, 2025—Decided December 18, 2025.)

APPEAL from the Court of Appeals for Lorain County,

No. 22CA011908, 2024-Ohio-1207.

_____

FISCHER, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ., joined. BRUNNER, J., concurred in part and dissented in part, with an opinion.

**FISCHER, J.**

{¶ 1} In this discretionary appeal filed by appellant, Edward Balmert, we are asked whether driving with a prohibited of concentration marijuana metabolites in one's system in violation of R.C. 4511.19(A)(1)(j)(viii)(II) must proximately cause serious physical harm to sustain a conviction for aggravated vehicular assault under R.C. 2903.08(A)(1)(a). Balmert has appealed his conviction for that offense and argues that the evidence against him is insufficient to show that the predicate offense proximately caused the harm suffered in this case. While we agree with Balmert that the State must prove proximate cause as a separate and distinct element that must be supported by sufficient evidence to sustain a conviction for aggravated vehicular assault, we believe that the State has met its burden in this case. Accordingly, we affirm the judgment of the Ninth District Court of Appeals.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On June 9, 2020, C.G., an Ohio State Highway Patrol trooper, was directing traffic at the intersection of Middle Ridge Road and the exit ramp off State Route 2 in Lorain County. C.G. had over 30 years of law-enforcement experience and routinely taught courses on traffic control to other law-enforcement officers. She had been dispatched to that intersection because the traffic light was out. The weather was clear that day, with no visibility issues on the road, and C.G. was wearing a reflective vest.

{¶ 3} At approximately 6:00 p.m., still during daylight hours, Balmert was driving and had stopped at the intersection where C.G. was directing traffic. He then began to turn left onto Middle Ridge Road and struck C.G. as she was directing

traffic. C.G. suffered serious injuries as a result of the accident, which ended her career as an Ohio State Highway Patrol trooper.

{¶ 4} State troopers on the scene immediately responded to the accident and spoke with Balmert. At the troopers' request, Balmert agreed to provide a urine sample, which was sent to a lab for toxicological testing. Balmert also told the state troopers at the scene that he regularly used "hemp" products, including that morning.[1] Sergeant David Francway was one of the troopers who responded to the scene and was a certified drug-recognition expert at the time. Sergeant Francway had Balmert perform various field sobriety tests to determine whether he was under the influence of marijuana. Thereafter, Balmert was arrested at the scene for driving under the influence. The toxicology report for the urine sample that Balmert had provided showed that he had a concentration of marijuana metabolites in his urine exceeding 200 ng/mL.

{¶ 5} Balmert was indicted on four counts: (1) aggravated vehicular assault under R.C. 2903.08(A)(1)(a); (2) vehicular assault under R.C. 2903.08(A)(2)(b); (3) operating a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them under R.C. 4511.19(A)(1)(a); and (4) operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance under R.C. 4511.19(A)(1)(j)(viii)(II).

{¶ 6} The case proceeded to a bench trial. At the end of the State's case, Balmert moved for acquittal under Crim.R. 29, which the court denied. Following the trial, the court found Balmert guilty on counts one and four: aggravated vehicular assault and operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance. The court

---

1. At trial and on appeal, Balmert has used the term "hemp" to refer to cannabis-derived products that were legal for purchase and consumption at the time of the accident, as opposed to "marijuana," which he has used to refer to cannabis-derived products that were not legal for purchase or consumption at the time of the accident. However, this distinction is not meaningful for purposes of this case under R.C. 4511.19.

found Balmert not guilty on counts two and three: vehicular assault and operating a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them. Balmert was sentenced to a two-year mandatory prison term for aggravated vehicular assault and three days of confinement for operating a vehicle under the influence of a listed controlled substance.

{¶ 7} Balmert appealed to the Ninth District Court of Appeals. Relevant to this appeal, Balmert argued that the trial court erred when it denied his Crim.R. 29 motion for acquittal as to the aggravated-vehicular-assault charge because the evidence presented was insufficient to show that having prohibited marijuana-metabolite levels in his system proximately caused the accident. 2024-Ohio-1207, ¶ 5-6 (9th Dist.). The appellate court disagreed, holding that "[i]n viewing [the] evidence in a light most favorable to the State, the trier of fact could reasonably conclude that proximate causation was proven beyond a reasonable doubt and Mr. Balmert's conviction for aggravated vehicular assault is supported by sufficient evidence."[2] *Id.* at ¶ 16.

{¶ 8} Balmert filed a discretionary appeal to this court, and we accepted three propositions of law for review:

> 1. In an aggravated vehicular assault or homicide case, proximate cause is its own separate and distinct element that must be proven. A mere OVI [operating-a-vehicle-while-under-the-influence] violation, by itself, is not sufficient to satisfy the

---

[2] Balmert also argued that the trial court had erred in sentencing him to post-release control because aggravated vehicular assault is not an offense of violence. *Id.* at ¶ 26. The appellate court agreed; it reversed that portion of Balmert's sentence and remanded the case for further proceedings on that issue. *Id.* at ¶ 30. However, that portion of the appellate court's decision has no bearing on the current appeal, and our decision does not address or affect it.

proximate cause requirement of aggravated vehicular assault or homicide.

2. When there are different versions of a predicate offense, evidence supporting an acquitted version cannot be used to satisfy the predicate offense element of the compound offense. The court can only use the evidence supporting the version of the predicate offense proven beyond a reasonable doubt.

3. A court cannot use evidence presented to support OVI based on actual impairment, which the defendant was acquitted of, to find that OVI based on metabolite levels proximately caused serious physical harm.

*See* 2024-Ohio-2718.

## II. ANALYSIS

### A. Balmert's conviction for aggravated vehicular assault is supported by sufficient evidence

{¶ 9} In Balmert's first proposition of law, he challenges the sufficiency of the State's evidence showing that the predicate offense—driving with a prohibited concentration of marijuana metabolites in his system in violation of R.C. 4511.19(A)(1)(j)(viii)(II)—proximately caused C.G.'s harm, thereby satisfying R.C. 2903.08(A)(1)(a). We agree with Balmert that proximate cause is a separate and distinct element required for an aggravated-vehicular-assault conviction—one that the State was required to prove beyond merely establishing the predicate offense. However, the State has met that burden in this case.

*1. We review de novo whether there is sufficient evidence*

*to support a conviction*

{¶ 10} "'Whether the evidence is legally sufficient to sustain a verdict is a question of law.'" *State v. Dent*, 2020-Ohio-6670, ¶ 15, quoting *State v.*

*Thompkins*, 1997-Ohio-52, ¶ 23. Thus, we review the sufficiency of the evidence de novo. *Id.*, citing *In re J.V.*, 2012-Ohio-4961, ¶ 3. When reviewing the sufficiency of the evidence, "the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Groce*, 2020-Ohio-6671, ¶ 7, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4.

*2. Foreseeability of the harm alleged is the key*

*inquiry in determining whether there is proximate cause*

{¶ 11} Balmert was convicted of aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), which provides:

> (A) No person, while operating or participating in the operation of a motor vehicle . . . shall cause serious physical harm to another person . . . in any of the following ways:
>
> (1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance.

By its plain terms, the statute requires the State to show that serious physical harm was "the proximate result" of a predicate offense—in this case, operating a vehicle while having a concentration of marijuana metabolites in excess of the legal limit, in violation of R.C. 4511.19(A)(1)(j)(viii)(II).

{¶ 12} The term "proximate result" in R.C. 2903.08(A)(1)(a) refers to "proximate cause." *See State v. Crawford*, 2022-Ohio-1509, ¶ 15, citing *State v. Carpenter*, 2019-Ohio-58, ¶ 51 (3d Dist.) ("In referring to the 'proximate result' of death 'cause[d]' by the defendant's actions, the involuntary-manslaughter statute is

simply talking about "proximate cause."). Proximate cause is different than cause in fact, which is often called "but for" causation. Cause in fact exists when the harm alleged "would not have occurred *but for*" the defendant's conduct. (Emphasis in original.) *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84 (1996). Cause in fact is not at issue in this case. C.G. would not have suffered her injuries but for Balmert's driving and striking her with his vehicle that day.

{¶ 13} Proximate causation, on the other hand, is legal causation. *Ackinson v. Anchor Packing Co.*, 2008-Ohio-5243, ¶ 48. Because "the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events," a person's liability for his or her conduct is generally "limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." *Johnson v. Univ. Hosps. of Cleveland*, 44 Ohio St.3d 49, 57 (1989). Proximate causation is thus satisfied only when the harm has a sufficiently close connection to the conduct at issue. *Crawford* at ¶ 16.

{¶ 14} We have previously held that foreseeability is the key determination in evaluating whether there is a sufficiently close connection between the conduct and the harm to establish proximate causation. *Id.* In *Crawford*, we considered whether a violation of a weapons-while-under-disability offense could serve as a predicate offense for an involuntary-manslaughter conviction, which "require[d] that one cause the death of another '*as a proximate result*' of the commission of a felony." (Emphasis added.) *Id.* at ¶ 4, quoting R.C. 2903.04(A). Crawford argued that his weapons-while-under-disability offense could not serve as the predicate offense for involuntary manslaughter because the underlying reason for his disability was unrelated to the victim's death. *Id.* at ¶ 13. We rejected this argument. Stressing that "foreseeable harm is what matters for proximate cause," we held that "if an offender uses a firearm in violation of the weapons-while-under-disability statute and the offender's use of that firearm proximately results in the

death of another, the elements of involuntary manslaughter are satisfied." (Citation omitted.) *Id.* at ¶ 16. Thus, since the death of another was a foreseeable consequence of having a weapon while under a disability, proximate cause was established, even though the reason for the disability was unrelated to the victim's death. *See id.* at ¶ 18.

### 3. *Balmert striking C.G. with his car was a foreseeable consequence of having a prohibited concentration of marijuana metabolites in his system*

{¶ 15} Turning to the case before the court, the basic question we must decide in determining whether the State showed the proximate cause required to support a conviction for aggravated vehicular assault is whether the harm of injuring a person on the road was a foreseeable consequence of driving while having a concentration of marijuana metabolites in excess of the legal limit, in violation of R.C. 4511.19(A)(1)(j)(viii)(II). That statute provides that "[n]o person shall operate any vehicle" when "[t]he person has a concentration of marihuana metabolite in the person's urine of at least thirty-five nanograms of marihuana metabolite per milliliter of the person's urine." Balmert testified that he regularly used hemp products, including on the morning of the accident. The toxicology report of the urine sample that Balmert provided to law-enforcement officers at the scene had a concentration of marijuana metabolites greater than 200 ng/mL, which is nearly six times the 35 ng/mL maximum under R.C. 4511.19(A)(1)(viii)(II).

{¶ 16} At trial, the State presented testimony from two law-enforcement officers who were certified drug-recognition experts at the time. They both explained that marijuana depresses a user's reflexes and slows reaction time, which can impair the user's ability to drive, especially in a situation calling for greater attentiveness. One officer also testified that marijuana use affects a user's depth and space perception as well as the user's ability to concentrate. Both officers testified that they had suspected that Balmert was under the influence of marijuana

based on the field sobriety tests administered at the scene, despite Balmert's notifying them of his preexisting medical conditions.

{¶ 17} Balmert correctly argues that a conviction for aggravated vehicular assault under R.C. 2903.08(A)(1)(a) requires a showing as a separate and distinct element that the harm was proximately caused by a predicate offense. However, when viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found that Balmert striking C.G. with his car was a foreseeable consequence of—and therefore was proximately caused by—his marijuana (or hemp) use.

{¶ 18} Our conclusion is not meant to construe aggravated vehicular assault as a strict-liability offense once it has been established that the defendant had a concentration of marijuana metabolites in his or her urine that exceeds the amount proscribed in R.C. 4511.19(A)(1)(j)(viii)(II). Nor does our conclusion foreclose the possibility that a defendant driving with a prohibited concentration of marijuana metabolites in violation of R.C. 4511.19(A)(1)(j)(viii)(II) could cause serious physical harm to another person in a way that is entirely unforeseeable, thus breaking the chain of proximate causation required for a conviction for aggravated vehicular assault under R.C. 2903.08(A)(1)(a). However, that is not the case here. Based on the testimony provided about the effects of marijuana use on one's ability to drive, the officers' observations of Balmert at the scene, and the circumstances of the accident, proximate causation was well within the boundaries of what a reasonable trier of fact could have found when viewing the evidence in the light most favorable to the prosecution.

{¶ 19} This conclusion is not negated by the fact that Balmert was acquitted for driving while "under the influence of alcohol, a drug of abuse, or a combination of them" under R.C. 4511.19(A)(1)(a). An accident can be the foreseeable result of the effects of marijuana use on one's driving, even if a trier of fact, for whatever reason, does not think that the effects of that use satisfy the catch-all provision for

driving "under the influence" found in R.C. 4511.19(A)(1)(a). We believe that to be the case here. Accordingly, we affirm the Ninth District's holding that Balmert's conviction was supported by sufficient evidence.

## B. We dismiss Balmert's second and third propositions of law as having been improvidently accepted

{¶ 20} In his second and third propositions of law, Balmert argues that the trial court improperly considered one of the charges of which he was acquitted, R.C. 4511.19(A)(1)(a), as the predicate offense for his conviction for aggravated vehicular assault. R.C. 4511.19(A)(1)(a) provides that "[n]o person shall operate any vehicle . . . if, at the time of the operation . . . [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶ 21} Balmert did not raise this issue in his initial appeal and thus has forfeited the issue here. *See State v. Quarterman*, 2014-Ohio-4034, ¶ 15. Therefore, we dismiss Balmert's second and third propositions of law as having been improvidently accepted.

{¶ 22} However, even if the issue had been raised, a review of the record shows that the trial-court judge did not consider this offense and made clear that the predicate offense for the aggravated-vehicular-assault conviction was Balmert's violation of R.C. 4511.19(A)(1)(j)(viii)(II) for having "a concentration of marihuana metabolite" in his urine that exceeded the legal limit. After acquitting Balmert of violating R.C. 4511.19(A)(1)(a) ("the impairment OVI"), the judge explained that the issue of impairment was "a moot point because he violated [R.C. 4511.19(A)(1)(j)(viii)(II)] by having the concentration of drugs in his system, which made it illegal for him to be driving, and he caused serious physical harm."

{¶ 23} Balmert also criticizes the Ninth District's opinion as improperly discussing impairment OVI as the predicate offense for his aggravated-vehicular-assault conviction. Even assuming arguendo that the Ninth District's opinion erroneously considered the impairment-OVI offense, the court was nonetheless

correct in holding that the proximate causation required for the aggravated-vehicular-assault conviction was supported by sufficient evidence. We have consistently declined to "reverse a correct judgment on the basis that some or all of the lower court's reasons are erroneous." *State ex rel. McGrath v. Ohio Adult Parole Auth.*, 2003-Ohio-5062, ¶ 8, citing *State ex rel. Johnson v. Dept. of Rehab. & Corr.*, 2002-Ohio-1629, ¶ 8; *accord Agricultural Ins. Co. v. Constantine*, 144 Ohio St. 275, 284 (1944).

### III. CONCLUSION

{¶ 24} A conviction for aggravated vehicular assault under R.C. 2903.08(A)(1)(a) requires that the physical harm suffered be the proximate result of a predicate offense—in this case, driving while having a concentration of marijuana metabolites in excess of the legal limit, in violation of R.C. 4511.19(A)(1)(j)(viii)(II). Balmert had a concentration of marijuana metabolites in his urine that exceeded the legal limit when he struck and seriously injured C.G. The State presented evidence showing that the use of marijuana products can slow the user's reaction time and affect his ability to focus. Viewing the evidence in the light most favorable to the prosecution, the trier of fact could reasonably conclude that Balmert's marijuana use was the proximate cause of the accident. Therefore, we affirm the Ninth District Court of Appeals' judgment.

{¶ 25} For the reasons explained above, we dismiss Balmert's second and third propositions of law as having been improvidently accepted.

Judgment affirmed.

_____

**BRUNNER, J., concurring in part and dissenting in part.**

{¶ 26} After causing an accident that left a state trooper seriously injured, appellant, Edward Balmert, was indicted on four counts: aggravated vehicular assault under R.C. 2903.08(A)(1)(a); (2) vehicular assault under R.C. 2903.08(A)(2)(b); (3) operating a vehicle while under the influence of alcohol or

drugs under R.C. 4511.19(A)(1)(a); and (4) operating a vehicle while under the influence of a listed metabolite of a controlled substance under R.C. 4511.19(A)(1)(j)(viii)(II). Following a bench trial, Balmert was acquitted of vehicular assault under R.C. 290308(A)(2)(b) and operating his vehicle while under the influence of alcohol or drugs under R.C. 4511.19(A)(1)(a). The State had presented testimony from two law-enforcement officers who were certified drug-recognition experts when they examined Balmert to determine whether he was under the influence of any substance when he caused the accident that seriously injured the state trooper. Despite one expert's opinion that Balmert "was under the influence of Cannibis and unable to operate a vehicle safely," the trial judge acquitted Balmert of the under-the-influence charge.

{¶ 27} The trial judge did find, however, that Balmert was guilty of the misdemeanor offense of violating R.C. 4511.19(A)(1)(j)(viii)(II), which prohibits a person from operating a vehicle while having a concentration of 35 or more nanograms per milliliter of marijuana metabolites present in the person's urine.[3] Balmert, who was 55 years old at the time of the accident, admitted to regularly using what he called "hemp" for his arthritis and voluntarily submitted to police a urine sample to be tested for drugs and alcohol. The test results established that Balmert had a concentration of marijuana metabolites in his system that exceeded the legal limit while operating a vehicle. This over-the-limit conviction then became the predicate offense for the State's charge of aggravated vehicular assault.

{¶ 28} To obtain a conviction on the aggravated-vehicular-assault charge, the State had to show that the serious physical harm that Balmert had caused was the proximate result of his over-the-limit conviction. *See* R.C. 2903.08(A)(1)(a).

---

3. On October 8, 2025, the Ohio Senate unanimously voted to pass a bill that would remove marijuana metabolites from the substances that can lead to a "per se" over-the-limit-while-driving violation. *See* Am.Sub.S.B. No. 55, 136th General Assembly (as passed by the Senate, Oct. 8, 2025).

As stated in the majority opinion, proximate cause is established "when the harm has a sufficiently close connection to the conduct at issue." Majority opinion, ¶ 13. I agree with the majority opinion up to this point. But regarding whether the State provided sufficient evidence of proximate cause in Balmert's case, the majority opinion lacks any analysis relating to how the over-the-limit offense caused the harm suffered by the state trooper in the accident.

{¶ 29} It may be a natural inclination to assume that because Ohio law prohibits a person's driving with a certain concentration of marijuana metabolites that a person who drives with that concentration of marijuana metabolites must be impaired or driving in an unsafe manner. This is common sense with respect to alcohol and what people may associate as over-the-limit driving as it relates to alcohol consumption. But the effects of consuming marijuana cannot be measured the same way as the effects of alcohol consumption. *See, e.g.*, *State v. King*, 2018-Ohio-4929, ¶ 23-25 (4th Dist.) (Harsha, J., concurring).

{¶ 30} At Balmert's trial, the State's drug-recognition expert testified:

> A [metabolite] number in [Balmert's] system . . . [is] just a number. . . . [I]t's not like alcohol where you can equate it to a certain number to show impairment. *It's the behaviors that are observed, along with the number that's in the system that we can then say for reasonable certainty that that person is impaired by that drug or that drug category*."

(Emphasis added.) The State's expert also acknowledged that a person's having marijuana metabolites in his or her system does not necessarily mean that he or she is impaired. Another witness for the State, a criminalist with the Ohio State Highway Patrol Crime Lab, testified that the metabolites found in Balmert's system resulted from a "breakdown product [of] . . . the parent drug THC." But "THC, the

*active* ingredient in marihuana, leaves the body relatively quickly." (Emphasis added.) *State v. Whalen*, 2013-Ohio-1861, ¶ 16 (1st Dist.). Therefore, the metabolites detected in Balmert's urine indicate only that he had used marijuana, not that he was impaired. *See* National Highway Traffic Safety Administration, *Drugs and Human Performance Fact Sheets*, 84 (Dec. 2024), available at https://rosap.ntl.bts.gov/view/dot/78924 (accessed Nov. 6, 2025) [https://perma.cc/PFC5-7K8F] ("Detection of total $\Delta^9$-THC metabolites in urine . . . only indicates prior exposure and cannot be correlated to drug impairment."); *see also* Ohio Senate Judiciary Committee, Feb. 22, 2023 Hearing, *Testimony of Tim Huey and Jeff Dillon*, https://www.ohiosenate.gov /legislation/135/sb26/committee (accessed Nov. 6, 2025) (explaining the scientific consensus that the marijuana metabolites tested in Ohio are inactive). Therefore, the State needed to show through something other than an assumption of impairment that Balmert's over-the-limit offense proximately caused the accident and the resulting harm.

{¶ 31} But the majority opinion fails to explain how the concentration of marijuana metabolites in Balmert's urine was enough to prove that his over-the-limit metabolite concentration proximately caused the accident. The opinion simply reaches the conclusion that the accident was a foreseeable consequence of Balmert's marijuana use earlier that morning. But because the marijuana metabolites prove only that Balmert had used a THC-based substance, not that he was actively impaired when the accident occurred, there needs to be more than a conclusory statement that the accident was a foreseeable consequence of Balmert's use of that substance. Because the trial court found that Balmert was not impaired at the time of the accident, there is no obvious connection between the level of marijuana metabolites detected in his urine and the harm that occurred to the state trooper.

{¶ 32} That is, we cannot presume that Balmert was impaired—or affected

in any way—by the fact that he had a prohibited concentration of metabolite levels in his urine. The State carries the burden to prove that connection, yet its own drug-recognition expert testified that this situation is "not like alcohol," so the "number" supporting Balmert's over-the-limit charge does not, without more evidence, equate to impairment. Moreover, because, as the State's witness testified, the metabolite is a "breakdown product [of] . . . the parent drug THC" and because Balmert regularly treated his arthritis with marijuana products, it is possible that the metabolite level detected at the time of the accident was caused in part by the marijuana Balmert had consumed prior to the day of the accident. *See* National Highway Traffic Safety Administration, *Drugs and Human Performance Fact Sheets: 2024*, at 84, https://rosap.ntl.bts.gov/view/dot/78924 (accessed Nov. 6, 2025) [https://perma.cc/PFC5-7K8F] ("metabolites may be present in urine for an extended period after last use").

{¶ 33} The State presented no evidence showing how it was reasonably foreseeable that Balmert's act of driving with a statutorily prohibited level of a nonactive "breakdown product" of marijuana in his system would result in serious physical harm to the state trooper. Therefore, I would reverse and vacate Balmert's conviction for aggravated vehicular assault. While a terrible and tragic accident occurred, ending the career path of a state trooper, the State presented no evidence to establish that the inactive metabolites detected in Balmert's urine proximately caused the accident.

{¶ 34} Balmert does not challenge his conviction under R.C. 4511.19(A)(1)(j)(viii)(II) for driving with an over-the-limit concentration of marijuana metabolites in his system, and it not for us to judge the wisdom of the legislature in enacting such a law. We must apply the laws as they are written. But if the General Assembly intended for criminal liability for aggravated vehicular assault to automatically attach to the crime of causing serious physical harm by driving with a prohibited level of marijuana metabolites in a person's system, then

it could have easily left "proximate result" out of R.C. 2903.08(A)(1)(a). For these reasons, I respectfully concur in part and dissent in part.

_____

Anthony Cillo, Lorain County Prosecuting Attorney, and Mark Anthony Koza, Assistant Prosecuting Attorney, for appellee.

Stephen P. Hanudel, for appellant.

Mathura J. Sridharan, Solicitor General, urging affirmance for amicus curiae Ohio Attorney General Dave Yost.

Blaise C. Katter, urging reversal for amicus curiae Ohio Association of Criminal Defense Lawyers.

Daniel J. Sabol, urging reversal for amicus curiae DUI Defense Lawyers Association.

_____