[Cite as *State v. Hearns*, 2026-Ohio-854.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30491 |
| Appellee | : | |
| | : | Trial Court Case No. 23 TRD 5644 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| FRANK HEARNS III | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on March 13, 2026, the judgment of the trial court is reversed and the matter is remanded to the trial court for the purpose of reimposing restitution in accordance with the law.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

EPLEY, J., concurs.

HUFFMAN, J., concurring.

**OPINION**

ARVIN S. MILLER, Attorney for Appellant
ASHLEY THOMAS, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Appellant Frank Hearns III appeals from a judgment of the Dayton Municipal Court ordering him to pay $41,850 in restitution for property damage in connection with his guilty plea to one count of failure to stop after an accident ("hit-skip"). Because the property damage was not a direct and proximate result of Hearns committing the hit-skip offense, and because Ohio law provides a $5,000 cap on restitution for any economic loss arising from a collision that was the direct and proximate result of the offender's operation of the motor vehicle before, during, or after committing a hit-skip offense, the trial court's judgment imposing $41,850 in restitution is reversed, and the matter is remanded to the trial court for the purpose of reimposing restitution in accordance with the law.

**Facts and Course of Proceedings**

{¶ 2} On October 24, 2023, Hearns lost control of his vehicle while traveling eastbound on West Third Street in Dayton, Ohio, and crashed into the side of a building owned by the Dayton Aviation Heritage National Historical Park ("Dayton Aviation"). After the collision, Hearns left the scene and failed to provide his information to either the owner of the property or law enforcement. As a result of that incident, Hearns was cited for failure to control in violation of R.C. 4511.202, a minor misdemeanor; reckless operation in violation of R.C. 4511.20, a third-degree misdemeanor; and hit-skip in violation of R.C. 4549.02(A), a first-degree misdemeanor.

{¶ 3} Under a plea agreement, Hearns pleaded guilty to the hit-skip charge in exchange for the State withdrawing the other two charges. Although Hearns was charged under R.C. 4549.02(A), Hearns agreed to plead guilty to hit-skip under R.C. 4549.03(A), which is the form of the offense involving an accident that results "in damage to real property, or personal property attached to real property, legally upon or adjacent to a public road or highway." The trial court accepted Hearns' guilty plea and then held a restitution hearing.

{¶ 4} At the restitution hearing, the State presented testimony from the chief of facilities at Dayton Aviation—Ranger David M. Martin. Martin testified that he is in charge of maintenance and repair at the Dayton Aviation building. Martin provided documentation establishing that the damage Hearns caused to the Dayton Aviation building cost $41,850 to repair. Martin testified that Dayton Aviation is self-insured and that the repairs were paid for with government funds.

{¶ 5} During the restitution hearing, Hearns' counsel advised the trial court that the hit-skip statute includes a $5,000 cap on restitution for offenders who, like Hearns, fail to provide proof of financial responsibility. In response, the trial court ruled that the $5,000 statutory cap on restitution did not apply because it conflicted with Marsy's Law and because Marsy's Law supersedes all conflicting statutes. As a result, the trial court found that it was permitted to impose restitution in the full amount of Dayton Aviation's economic loss.

{¶ 6} After considering the testimony given at the restitution hearing and Hearns' presentence investigation report, the trial court ordered Hearns to pay $41,850 in restitution to Dayton Aviation and immediately converted the restitution order to a civil judgment. The trial court also suspended Hearns' driver's license for one year, sentenced Hearns to 180 days in jail with credit for eight days served, suspended the balance of the jail sentence, and placed Hearns on unsupervised probation for one year.

3

{¶ 7} Hearns now appeals from the trial court's order of restitution and raises one assignment of error for review.

**Assignment of Error**

{¶ 8} Under his assignment of error, Hearns claims that the trial court erred by ordering him to pay $41,850 in restitution for damage to the Dayton Aviation building on grounds that the damage was not a direct and proximate result of his hit-skip offense. Hearns also claims that the trial court was statutorily barred from ordering more than $5,000 in restitution for his hit-skip offense. In response, the State asserts that the trial court correctly found that Marsy's Law supersedes the $5,000 statutory cap on restitution for hit-skip offenses and that the trial court was permitted to impose restitution in the full amount of Dayton Aviation's economic loss.

*Standard of Review*

{¶ 9} "Generally, a trial court's imposition of restitution is reviewed on appeal for an abuse of discretion." *State v. Brown*, 2024-Ohio-2004, ¶ 12 (2d Dist.), citing *State v. Wilson*, 2015-Ohio-3167, ¶ 11 (2d Dist.). "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985). "A trial court abuses its discretion when it awards restitution in an amount contrary to law." *State v. Messer*, 2023-Ohio-4355, ¶ 7 (3d Dist.), citing *State v. Rohrbaugh*, 2010-Ohio-6375, ¶ 20-21 (3d Dist.).

*R.C. 2929.28*

{¶ 10} R.C. 2929.28 governs financial sanctions for misdemeanor offenses. Section (A)(1) of the statute provides that a trial court may order a defendant to pay restitution to the victim of the defendant's crime "in an amount based on the victim's

4

economic loss." The statute also provides: "The amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." R.C. 2929.28(A)(1).

{¶ 11} "Economic loss" is defined as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense" and specifically includes "property loss." R.C. 2929.01(L). Therefore, "[w]hether something is an economic loss 'is dependent on whether the loss is an economic detriment suffered by the victim that is the proximate result of the offense at issue.'" *State v. Carson*, 2024-Ohio-5407, ¶ 11 (2d Dist.), quoting *State v. Carroll*, 2015-Ohio-4109, ¶ 12 (2d Dist.). "[A] consequence is a direct and proximate result of an act when the consequence is foreseeable and is produced by the natural and continuous sequence of events following the act." *State v. Yerkey*, 2022-Ohio-4298, ¶ 16.

{¶ 12} "When reviewing whether a restitution order was a direct and proximate result of the commission of the offense, appellate courts review the record to determine whether it supports the trial court's findings regarding causation." *State v. Smith*, 2023-Ohio-126, ¶ 19 (11th Dist.); *accord In re L.M.*, 2025-Ohio-5839, ¶ 15 (9th Dist.). "The evidence in the record must be enough to substantiate the relationship of the offender's criminal conduct to the amount of the victim's loss." *Cleveland v. Fuller*, 2023-Ohio-1669, ¶ 13 (8th Dist.), citing *State v. Norton*, 2015-Ohio-2516, ¶ 44 (8th Dist.).

{¶ 13} "A trial court abuses its discretion 'when it orders restitution that does not bear a reasonable relationship to the actual financial loss suffered' as a result of the defendant's offense and 'if the award of restitution is not supported by competent, credible evidence in the record from which the court can discern the amount of restitution to a reasonable degree

of certainty.'" *Carson* at ¶ 14, quoting *State v. Williams*, 2017-Ohio-125, ¶ 14 (2d Dist.). (Other citations omitted.)

*R.C. 4549.02 and 4549.03*

{¶ 14} Hearns pleaded guilty to hit-skip in violation of R.C. 4549.03(A). During oral argument, the parties pointed out that the trial court's entry of conviction recorded Hearns' conviction as being under R.C. 4549.02(A). The parties agreed that this deviance has no bearing on the issue in this appeal, as both statutes contain the following relevant language with regard to restitution:

> The offender shall provide the court with proof of financial responsibility as
> defined in section 4509.01 of the Revised Code. If the offender fails to provide
> that proof of financial responsibility, then, in addition to any other penalties
> provided by law, the court may order restitution pursuant to section 2929.28 of
> the Revised Code in an amount not exceeding five thousand dollars for any
> economic loss arising from an accident or collision that was the direct and
> proximate result of the offender's operation of the motor vehicle before, during,
> or after committing the offense charged under this section.

R.C. 4549.02(B)(4) and 4549.03(B).

{¶ 15} The foregoing language was added to the hit-skip statutes in 2011. 2011 Sub.H.B. No. 5. Prior to the amendments, restitution for a hit-skip offense was only authorized by the general restitution statute, R.C. 2929.28(A)(1), meaning that restitution for a hit-skip offense could only be ordered in the amount of the economic loss suffered by the victim as a direct and proximate result of the of the hit-skip offense. In a decision predating the 2011 amendments to the hit-skip statutes, the Tenth District Court of Appeals highlighted this distinction. *Columbus v. Cardwell*, 2008-Ohio-1725 (10th Dist.).

6

**{¶ 16}** In *Cardwell*, the defendant was convicted of hit-skip under Columbus Traf.Code 2135.12(A). *Cardwell* at ¶ 4-5. As part of the defendant's sentence, the trial court ordered the defendant to pay $771.94 in restitution for damage to the victim's vehicle. *Id*. The defendant appealed from the trial court's restitution order and argued that R.C. 2929.28(A) did not permit restitution for the hit-skip offense because the damage to the victim's vehicle was not directly and proximately caused by the offense. *Id*. at ¶ 10.

**{¶ 17}** The Tenth District agreed with the defendant and concluded that "R.C. 2929.28(A) prohibited the trial court from imposing restitution . . . because the victim's economic loss was not a direct and proximate result of appellant's hit-skip offense." *Id*. at ¶ 1. In so holding, the court explained:

> [The victim] suffered no economic loss as a direct and proximate result of appellant's hit-skip conviction because the property damage to [the victim's] vehicle occurred before the hit-skip violation. Therefore, the trial court could not order restitution as part of a criminal sanction. . . .
>
> Plaintiff-appellee, city of Columbus, argues that [the victim's] economic loss was a direct and proximate result of the hit-skip conviction because an accident or collision is a prerequisite for a hit-skip offense. Columbus City Code Section 2135.12. According to the city, because [the victim's] economic loss was "a reasonably foreseeable indirect consequence" of the hit-skip offense, the trial court had authority to order restitution. We disagree.
>
> The city's argument is logically flawed. Just because there must be an accident or collision before a hit-skip violation can occur does not establish that the property damage resulted from the hit-skip violation. As appellant points out, the property damage from the collision existed regardless of

7

whether the appellant subsequently left the scene of the accident. Therefore, the property damage could not have been a direct and proximate result of the hit-skip violation.

*Cardwell* at ¶ 11-13.

{¶ 18} The Tenth District revisited its holding in *Cardwell* after the $5,000-cap-on-restitution language was added to the hit-skip statutes and the Columbus Traffic Code. *Columbus v. Wood*, 2016-Ohio-3081 (10th Dist.) As in *Cardwell*, the defendant in *Wood* was convicted of hit-skip under Columbus Traf.Code 2135.12(A). *Wood* at ¶ 3. As part of the defendant's sentence, the trial court ordered the defendant to pay $5,999.09 in restitution for damages to the victim's vehicle. *Id*. at ¶ 5. The defendant in *Wood* appealed from the trial court's restitution order on grounds that R.C. 2929.28(A) limited restitution to damages that are directly and proximately caused by the convicted offense. Like *Cardwell*, the defendant in *Wood* claimed that the damages in question were not directly and proximately caused by his hit-skip offense. *Id*. at ¶ 8.

{¶ 19} In analyzing the defendant's argument, the Tenth District distinguished *Cardwell* and noted that the decision had concerned R.C. 2929.28(A), which "limits potential restitution to the damages that are a 'direct and proximate result' of the commission of the offense." (Footnote omitted.) *Id*. Turning to the issue in *Wood*, the court recognized that "[t]he trial court was required to first determine whether restitution was appropriate, based on an analysis of whether property damage was a 'direct and proximate result' of [the defendant's] offense of leaving the scene of an accident." *Id*. The Tenth District further recognized that Columbus Traf.Code 2135.12 had been amended since *Cardwell* to include the following language:

If the offender fails to provide that proof of financial responsibility, then, in

8

addition to any other penalties provided by law, the court may order restitution pursuant to section 2929.18 or 2929.28 of the Revised Code in an amount not exceeding five thousand dollars for any economic loss arising from an accident or collision *that was the direct and proximate result of the offender's operation of the motor vehicle before, during, or after committing the offense charged under this section*.

(Emphasis in original.) *Id*. at ¶ 9, quoting Columbus Traf.Code 2135.12(b)(1).

{¶ 20} After recognizing the addition of the foregoing language, which is analogous to the language in R.C. 4549.02(B)(4) and 4549.03(B), the Tenth District found that "[t]he trial court did not specifically determine that the damage from the accident was a direct and proximate result of [the defendant's] operation of his vehicle before, during, or after his leaving the scene of the accident." *Id*. at ¶ 10. The Tenth District concluded that this failure and the trial court's decision to impose restitution in excess of $5,000 were reversible errors. *Id*. at ¶ 15-16. The Tenth District reversed and remanded the case so that the trial court could "hold a new hearing to determine whether the 'accident or collision' for which the trial court found damage resulted 'was the direct and proximate result of [the defendant's] operation of the vehicle before, during, or after committing the [hit-skip] offense,' and to require the trial court to limit any such finding of restitution against [the defendant] under Columbus Traffic Code 2135.12(b)(1) to no more than $5,000." *Id*. at ¶ 16.

{¶ 21} The State insinuates that the Tenth District's holding in *Wood* somehow discredits the proximate cause analysis it previously articulated in *Cardwell*. However, we do not find that to be the case. *Wood* simply indicates that if the hit-skip offense is not a direct and proximate cause of the sought-after economic damages, restitution can still be obtained for any economic loss arising from a collision that was the direct and proximate

9

result of the offender operating his motor vehicle before, during, or after, committing the hit-skip offense as long as the order of restitution does not exceed $5,000.

{¶ 22} The Eighth District Court of Appeals has employed a similar understanding of the limits of restitution for hit-skip offenses under the Revised Code. *Cleveland v. Poythress*, 2024-Ohio-2911 (8th Dist.). In *Poythress*, the defendant was convicted of hit-skip in violation of Cleveland Cod.Ord. 435.16(a)(1). *Id*. at ¶ 5-6. The victim, who was rear-ended by the defendant, submitted proof of $2,997 in damage to his vehicle. *Id*. at ¶ 8. As part of the defendant's sentence, the trial court ordered the defendant to pay the entire $2,997 as restitution. *Id*. The defendant appealed and argued that the restitution order was unlawful because the damage to the victim's vehicle was not a direct and proximate result of her hit-skip offense. *Id*. at ¶ 9-13. Similar to *Cardwell* and *Wood*, the defendant argued that "leaving the scene of an accident cannot be the proximate cause of any losses already incurred at the time of departure" and that "the trial court erred in ordering her to pay restitution for the damages to the victim's car incurred before she left the scene of the accident." *Id*. at ¶ 12.

{¶ 23} Like the Tenth District in *Wood*, the Eight District in *Poythress* pointed out that the hit-skip ordinance provision had been amended to include language stating that if a hit-skip offender "fails to provide the court with evidence of financial responsibility, the trial court may order restitution pursuant to R.C. 2929.28 in an amount not exceeding $5,000 'for any economic loss arising from the accident or collision that was the direct and proximate result of the offender's operation of the motor vehicle before, during, or after committing the [hit-skip offense].'" *Id*. at ¶ 16-17, quoting Cleveland Cod.Ord. 435.16(b)(2).

{¶ 24} The Eight District found that although "an accident or collision is an element of a violation of Cleveland Cod.Ord. 435.16(a)(1) . . . [t]he accident or collision itself, however, is insufficient to allow the court to order restitution. Rather, under the ordinance, the court

10

must determine whether the defendant's operation of their vehicle was the direct and proximate cause of the victim's economic loss." *Poythress*, 2024-Ohio-2911 at ¶ 18. The Eighth District then found that it was "undisputed that [the defendant] rear-ended the victim's car causing the damages to his vehicle." *Id*. at ¶ 22. Accordingly, the Eighth District held that the trial court did not unlawfully order the defendant to pay $2,997 in restitution for the victim's damages where it was determined, consistent with Cleveland Cod.Ord. 435.16(b)(2), that the defendant's "operation of her vehicle in rear-ending the victim's car before leaving the scene of the accident was the direct and proximate cause of the victim's economic loss." *Id*.

{¶ 25} Based on the foregoing case law and relevant statutory language, we find that if the victim's economic loss is not a direct and proximate result of a hit-skip offense, restitution can still be obtained for the offense under R.C. 4549.02(B)(4) and 4549.03(B), or under an analogous municipal code provision, for any economic loss arising from a collision that was the direct and proximate result of the offender operating his motor vehicle before, during, or after, committing the hit-skip offense. We now address whether Marsy's Law has any effect on that provision.

*Marsy's Law*

{¶ 26} Marsy's Law is an amendment to Article I, Section 10a of the Ohio Constitution that has expanded the rights afforded to victims of crimes. "Marsy's Law enumerates ten victims' rights, 'which shall be protected in a manner no less vigorous than the rights afforded to the accused.'" *State ex rel. Suwalski v. Peeler*, 2021-Ohio-4061, ¶ 14, quoting Ohio Const., art. I, § 10a(A), abrogated on other grounds by *State v. Brasher*, 2022-Ohio-4703. Among those rights is the victim's right "to full and timely restitution from the person who

11

committed the criminal offense or delinquent act against the victim." Ohio Const., art. I, § 10a(A)(7).

{¶ 27} The provisions of Marsy's Law are "'self-executing and severable, and shall supersede all *conflicting* state laws.'" (Emphasis in original.) *Yerkey*, 2022-Ohio-4298, at ¶ 12, quoting Ohio Const., art. I, § (10)(a)(E). The Supreme Court of Ohio has explained that "no portion of Marsy's Law 'conflicts' with the restitution statutes such that they are 'supersede[d],'" and that "the statutes governing 'restitution' are still used to determine which losses qualify for restitution." (Bracketed text in original.) *Id*., quoting Section 10(a)(E). "[S]ince the adoption of Marsy's Law, both [the Supreme Court of Ohio] and other courts in Ohio have continued to determine the amount of restitution based on the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." (Citations omitted.) *Id*. at ¶ 13. The Supreme Court has made it clear that Marsy's Law "did not alter the meaning of 'restitution' in Ohio law" and that "[r]estitution in Ohio is limited to economic losses suffered by the victim as a direct and proximate result of the commission of the offense." *Id*. at ¶ 1, 15, citing R.C. 2929.28(A)(1). (Other citations omitted.) In other words, the full-and-timely-restitution provision in Marsy's Law does not affect the requirements for imposing restitution for misdemeanor offenses under R.C. 2929.28(A).

{¶ 28} The State asks us to affirm the trial court. The State claims that when Hearns crashed his vehicle into the Dayton Aviation building, the owner of the building became a victim pursuant to Marsy's Law and is entitled to full and timely restitution. The State also claims that the $5,000 statutory cap on restitution in R.C. 4549.02(B)(4) and 4549.03(B) conflicts with the full-and-timely-restitution provision in Marsy's Law and is therefore superseded.

12

**{¶ 29}** We note that Marsy's Law was enacted in 2017, after the Tenth District Court of Appeals issued its decision in *Wood*. Accordingly, *Wood* does not address the issue of whether the $5,000 cap on restitution for hit-skip offenses conflicts with Marsy's Law. *Poythress*, which was decided after the enactment of Marsy's Law, involved a full award of restitution to the victim that happened to be under $5,000. Therefore, *Poythress* did not warrant a Marsy's Law conflict analysis since the victim received full restitution.

**{¶ 30}** The trial court relied on *Cleveland v. Fuller*, 2023-Ohio-1669 (8th Dist.), in finding that the $5,000 statutory cap on restitution for hit-skip offenses conflicted with Marsy's Law. In *Fuller*, the defendant was convicted of OVI in violation of Cleveland Cod.Ord. 433.01 and was sentenced to pay $7,300 in restitution for structural damage to the victim's real property *Fuller* at ¶ 4-7. Section (h)(3)(B)(7) of the OVI ordinance contained the same language as R.C. 4549.02(B)(4) and 4549.03(B) regarding the $5,000 cap on restitution, but as applied to OVI offenses. *Id*. at ¶ 18. The defendant in *Fuller* appealed the trial court's restitution order on grounds that it exceeded the $5,000 statutory cap set forth in the OVI ordinance. *Id*. at ¶ 9. The Eighth District Court of Appeals, however, found that the $5,000 cap on restitution conflicted with Marsy's Law and stated the following:

> The limitations placed on the applicability and breadth of restitution under [Cleveland Cod.Ord.] 433.01(h)(3)(B)(7) unambiguously conflict with Marsy's Law, which contains no restrictive language and permits a victim to recover the full amount of economic loss so long as the award is established by the preponderance of the evidence under R.C. 2929.28(A)(1) . . . . If [Cleveland Cod.Ord.] 433.01(h)(3)(B)(7) were to apply as written, [the victim] would not be made whole for the economic loss caused by [the defendant's] criminal conduct. It is well settled that "where constitutional provisions and the

13

legislative enactment are 'so clearly in conflict that they cannot both stand the statutory provision must fail.'"

*Id.* at ¶ 20, quoting *State v. Oliver*, 2021-Ohio-2543, ¶ 71 (12 Dist.), quoting *State ex rel. Price v. Huwe*, Ohio St. 304, 306 (1922).

{¶ 31} Based on the foregoing reasoning, the Eighth District found that Marsy's Law superseded Cleveland Cod.Ord. 433.01(h)(3)(B)(7) to the extent that it caps the availability of restitution to a victim. *Id.* Significantly, in *Fuller* there was no dispute that the damage to the victim's property was proximately caused by the defendant's OVI offense. *Id.* at ¶ 21. This is significant because the Eighth District found that Cleveland Cod.Ord. 433.01(h)(3)(B)(7) unambiguously conflicted with Marsy's Law given that Marsy's Law permits "a victim to recover the full amount of economic loss *so long as the award is established by the preponderance of the evidence under R.C. 2929.28(A)(1)*." (Emphasis added.) *Id.* at ¶ 20. That is, so long as the order of restitution does "not exceed the amount of the economic loss suffered by the victim *as a direct and proximate result of the commission of the offense*." (Emphasis added.) R.C. 2929.28(A)(1). Because the victim's damages in *Fuller* were a direct and proximate result of the defendant's OVI offense, under R.C. 2929.28(A), the trial court was permitted to award full restitution to the victim. The $5,000 restitution cap for OVI offenses of Cleveland Cod.Ord. 433.01(h)(3)(B)(7) conflicted with R.C. 2929.28(A) and Marsy's Law, too.

{¶ 32} The present case is distinguishable from *Fuller* because the $41,850 in damage to the Dayton Aviation building was not a direct and proximate result of Hearns' hit-skip offense. In ordering restitution, the trial court found that Hearns' "actions were the legal and proximate cause of the damage to the building" because "*but for* the actions and conduct of [Hearns], there would not have been economic loss that was attributed to the victim."

(Emphasis added.) May 12, 2025 Hearing Tr. 42. This finding of the trial court is erroneous because it pertains to cause in fact as opposed to proximate cause.

{¶ 33} "Proximate cause is different than cause in fact, which is often called 'but for' causation." *State v. Balmert*, 2025-Ohio-5588, ¶ 12; *accord McCarty v. Pedraza*, 2014-Ohio-3262, ¶ 21 (2d Dist.); *Ackison v. Anchor Packing Co.*, 2008-Ohio-5243, ¶ 48; *Renfrow v. Norfolk S. Ry. Co.*, 2014-Ohio-3666, ¶ 20. "Cause in fact exists when the harm alleged 'would not have occurred *but for*' the defendant's conduct." (Emphasis in original.) *Balmert* at ¶ 12, quoting *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84 (1996). "Proximate causation, on the other hand, is legal causation." *Id*. at ¶ 13, citing *Ackison* at ¶ 48. "Because 'the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events,' a person's liability for his or her conduct is generally 'limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability.'" *Id*., quoting *Johnson v. Univ. Hosps. of Cleveland*, 44 Ohio St.3d 49, 57 (1989). "Proximate causation is thus satisfied only when the harm has a sufficiently close connection to the conduct at issue." *Id*., citing *State v. Crawford*, 2022-Ohio-1509, ¶ 16.

{¶ 34} "[F]oreseeability is the key determination in evaluating whether there is a sufficiently close connection between the conduct and the harm to establish proximate causation." *Id*. at ¶ 14, citing *Crawford* at ¶ 16. "If the harm is the natural and probable consequence of an act, and it should have been foreseen in view of all the attending circumstances, the harm becomes the proximate result of the act." *Sizemore v. Deemer*, 2021-Ohio-1934, ¶ 22 (3d Dist.), citing *Mussivand v. David*, 45 Ohio St.3d 314, 321(1989). For example, damage to property via a collision is foreseeable, i.e., a natural and probable consequence of someone driving while intoxicated, as recognized in *Fuller*.

**{¶ 35}** In contrast, damage to property is not similarly foreseeable when someone commits a hit-skip offense. Although there certainly must be a collision for there to be a hit-skip offense, the offense is committed simply when a driver involved in a collision fails to stop and provide the required information. *See* R.C. 4549.02(A) and 4549.03(B). Significantly, the hit-skip statutes do not make fault an element of the offense. *State v. Platfoot*, 2009-Ohio-3769, ¶ 23 (2d Dist.) Therefore, it is possible for a hit-skip offender to not have been the person who caused the collision. This supports the notion that the resulting economic loss from a collision underlying a hit-skip offense does not flow from the hit-skip offense itself. As noted in *Cardwell*:

> Just because there must be an accident or collision before a hit-skip violation can occur does not establish that the property damage resulted from the hit-skip violation. . . . [T]he property damage from the collision existed regardless of whether the appellant subsequently left the scene of the accident. Therefore, the property damage could not have been a direct and proximate result of the hit-skip violation.

*Cardwell*, 2008-Ohio-1725, at ¶ 13 (10th Dist.).

**{¶ 36}** In this case, the damage to the Dayton Aviation building was not a natural and probable consequence of Hearns leaving the scene of the collision without providing his information to the property owner or the police. The damage to the Dayton Aviation building would have occurred regardless of whether Hearns had engaged in that conduct, as the collision and the resulting damage occurred before he committed the hit-skip offense. The hit-skip offense simply required Hearns to leave the scene of the collision without providing the required information to the property owner or the police. His failure to do so is not a legal,

16

proximate cause of the $41,850 in damages. Accordingly, the property damage was not a direct and proximate result of Hearns' hit-skip offense.

{¶ 37} For the foregoing reasons, we find that the trial court improperly relied on *Fuller* and erred by finding that Marsy's Law supersedes the $5,000 statutory cap on restitution in R.C. 4549.02(B)(4) and 4549.03(B). Again, *Fuller* involved a situation in which an OVI offense directly and proximately resulted in property damage to the victim, thus entitling the victim to full restitution as provided by R.C. 2929.28(A) and Marsy's Law. That is not the case here. The language of R.C. 4549.02(B)(4)/R.C. 4549.03(B) governs restitution for Hearns' hit-skip offense. Under these statutory provisions, the trial court had authority to impose no more than $5,000 in restitution for damage that was the direct and proximate result of Hearns operating his vehicle before, during, or after committing the hit-skip offense.

{¶ 38} In so holding, we recognize the argument addressed by the Supreme Court of Ohio in *Yerkey*, 2022-Ohio-4298, claiming that the failure "to use restitution sanctions to cover all of a victim's costs runs counter to public policy." *Id*. at ¶18. In response to that argument, the Supreme Court aptly responded:

No one on this court thinks that victims should not be made whole. But to what extent court-ordered restitution as part of a criminal case may be used to make a victim whole is a matter determined by statute and the Constitution, as explained above. Moreover, it is important to recall that restitution through the criminal-justice system is not the only recourse for crime victims. A crime victim has the same access to the civil-justice system as anyone who has been the victim of a tort and, moreover, may seek recovery for his or her losses from the crime-victims' compensation funds administered by the Ohio Attorney General and the Court of Claims, which

17

is helpful in cases in which the perpetrator is judgment-proof. There is also a countervailing policy consideration—if restitution were to be expanded to include economic detriments that were not "direct and proximate result[s] of the commission of the offense," R.C. 2929.28(A)(1); R.C. 2929.18(A)(1), we would risk mutating sentencing hearings throughout the state into civil trials of all grievances the victim may have against the offender, regardless of their relation to the crimes at issue. For the sake of prompt criminal-justice proceedings across the state, that is a pitfall to avoid.

(Footnotes omitted.) *Id.*

{¶ 39} Under Ohio law, the trial court had authority to impose restitution in an amount that did not exceed $5,000 for damage that was the direct and proximate result of Hearns operating his vehicle before, during, or after he committed his hit-skip offense. The trial court abused its discretion by failing to follow the law in that regard.

{¶ 40} Hearns' assignment of error is sustained.

### Conclusion

{¶ 41} Having sustained Hearns' assignment of error, the judgment of the trial court ordering Hearns to pay restitution in the amount of $41,850 is reversed and the matter is remanded to the trial court for the purpose of reimposing restitution for the economic loss arising from the collision that was the direct and proximate result of Hearns operating his vehicle before, during, or after committing his hit-skip offense in an amount that does not exceed $5,000.

. . . . . . . . . . . . .

EPLEY, J., concurs.

18

HUFFMAN, J., concurs:

{¶ 42} I concur in the result reached in the majority opinion, but I write separately to clarify, or simplify, the analysis therein. After Hearns failed to provide proof of financial responsibility, he was subject to the statutory cap for economic loss arising from the collision that was the direct and proximate result of his operation of his vehicle before, during, or after committing the hit-skip offense. Most significantly, the statutory meaning of restitution— compensation for economic losses *as a direct and proximate result of the offense*—was not altered by Marsy's Law. Here, the economic loss at issue was not the direct and proximate result of the hit-skip offense; the loss arose from the collision that was the direct and proximate result of Hearns' operation of his vehicle before leaving the scene. Put differently, the $5,000 cap did not conflict with Marsy's Law, and the trial court's reliance on *Fuller,* in which it was undisputed that the damage to the victim's property *was* proximately caused by the defendant's OVI offense, was misplaced.